JESSEPH v. LEVERIDGE.

4-7022     170 S. W. 2d 71

Opinion delivered April 12, 1943.

*Lewis C. Jesseph* and *Price Dickson,* for appellant.

*Virgil T. Seaberry* and *Bernal Seamster,* for appellee.

McFADDIN, J. This is a will case. The facts, as gleaned from the pleadings and decree of the chancery court, show that Dora Dingle, a spinster, died testate in Washington county, Arkansas, in 1939 at the age of 79. Her will, duly probated, after items not here involved, provided: In Item 2, a trust fund for the cemetery; in Item 3, a bequest of certain jewelry to "my niece, Martha Dingle, daughter of William B. Dingle"; in Item 4, a bequest of certain personal property "to my nephew, William B. Dingle"; in Item 5, a bequest of certain personal property "to my said niece, Martha Dingle, who is the daughter of William B. Dingle"; in Item 6, a trust fund for a cemetery. In the codicil to the will there was bequeathed all the residue of the estate "to my nephews and nieces, share and share alike." The testatrix, Dora Dingle, was the last surviving member of her family of the full blood; and all of her surviving relatives were of the half blood. At the time of making her will and codicil (in 1936-1937), she had then living two nephews (one of whom died before the testatrix) and two nieces; and she had at the time of making the will and codicil three deceased nephews and one deceased niece, all of whom had living children. J. L. Stafford, as executor of the estate of Dora Dingle, filed suit in the Washington chancery court seeking a judicial construction of the will. He named as defendants certain parties alleged to be nephews, nieces, grandnephews and grandnieces of the testatrix. Flora D. Jesseph, a niece, anwered, contending that the estate went to nephews and nieces only. Ura A. Leveridge *et al.* answered, contending that the grandnieces and grandnephews shared *per capita.* The question was, whether the testatrix, when she used the expression "to my nephews and nieces, share and share alike," meant (a) only nephews and nieces who were children of her brothers and sisters, or whether she meant (b)

also grandnieces and grandnephews—that is, the children of nieces and nephews then deceased. If the first construction is adopted, then the residuary estate is divided into four shares. If the second construction is adopted, then the residuary estate is divided into eighteen shares. At least two other possible constructions could have been considered, but do not appear in the pleadings or the decree. With the issues joined as stated, the cause was heard by the chancery court, which rendered a decree holding that the language "to my nephews and nieces, share and share alike" was ambiguous; and the court allowed parol evidence to be admitted to explain the ambiguity; and the court then decreed that the language "to my nephews and nieces, share and share alike" meant also grandnephews and grandnieces—that is, children of deceased nephews and nieces; and the chancery court ordered a distribution of the residuary estate into eighteen shares.

The executor became satisfied with the decree and has not appealed; but Flora Jesseph has appealed, and the following are the issues herein:

1. Chancery jurisdiction. 2. Absence of oral testimony. 3. Correctness of the decree.

## 1. Chancery Jurisdiction.

The appellant poses the question, whether the chancery court had jurisdiction to construe the will. This question was not presented in the lower court, and is raised here for the first time. It is true that this court held in *Frank* v. *Frank,* 88 Ark. 1, 113 S. W. 640, 19 L. R. A., N. S. 176, 129 Am. St. Rep. 73, that equity would not entertain jurisdiction of a bill brought solely to construe a will which disposed of legal estates only; and it is also true that in the same case this court held that the objection that equity had no jurisdiction of the subject-matter was a point that could not be waived. Our decision in the Frank case was in accordance with the weight of authority as it existed at that time. But the trend of decisions in recent years—not only in this court, but in many other jurisdictions—has reflected a continuous effort to seize

upon any matter that would give equity courts jurisdiction to construe any will, thus creating exceptions to the previously announced rule. These exceptions have become so numerous that very little is left of the original rule. Discussions on this point may be found in Pomeroy's Equity Jurisprudence, 5th Edition, §§ 1155-1157, and in Page on Wills (Lifetime Edition), §§ 1602-1605. In *Norris* v. *Johnson,* 151 Ark. 189, 235 S. W. 804, it was held that where the executors were directed by the will to convert the estate into cash and divide the proceeds, 'then equity had jurisdiction to construe the will. It has always been recognized that where the will created a trust, equity would take jurisdiction to construe the will. In *Williamson* v. *Grider,* 97 Ark. 588, 135 S. W. 861, and also in *Heiseman* v. *Lowenstein,* 113 Ark. 404, 169 S. W. 224, Ann. Cas. 1916C, 601, cases and authorities are cited on this point. In *Gathright* v. *Gathright,* 175 Ark. 1130, 1 S. W. 2d 809, Chief Justice Hart, speaking for this court, said: ''It is the settled law in this state that if, under the terms of the will, it be doubtful what the rights and duties of the trustee are, he can resort to equity for a proper construction and interpretation of the will. For the same reason those interested under its terms in the proper definition and limitation of the trust and enforcement thereof may come to such court for like relief.''

In 69 C. J. 859, it is stated: ''Where a case is properly brought in a court of equity, under some of its known and accustomed heads of jurisdiction, and the question of the construction of a will incidentally arises, the court has jurisdiction to construe the will in order to afford the relief to which the parties are entitled. This is on the theory that, where a court of equity has obtained jurisdiction for any purpose, it is empowered to determine all questions that may arise in the progress of the cause and do complete justice. And it is not necessary to empower the court to construe the will that a trust should have been created by it. The rule has been applied in actions for partition, in actions for partition and to set aside an order of the probate court purporting to construe a will which was admitted to probate, in actions to quiet title, or to remove cloud from title, in an .

action by devisees to enjoin an execution from a sale of lands devised to them not authorized to be sold under a power of sale given them by the will, in actions for an accounting, in actions to set aside fraudulent conveyances, in actions to procure the appointment of a trustee to carry out the trust created by the will, the testator failing to have named a trustee, in an action to compel a transfer of corporate stock, in an action to authorize a conversion of infants' real estate into personalty, in actions to recover legacies, and in an action to establish the equitable right of the next of kin to the personal estate.''

To list each instance where equity will take jurisdiction to construe a will would unduly extend this opinion. It is sufficient to say that in the case at bar the will created two trust estates. Furthermore, the parties treated the suit as a suit for partition of the estate. On either of these grounds the chancery court had jurisdiction to construe the will.

## 2. Absence of Oral Testimony.

The decree of the chancery court was rendered on May 8, 1942, and recites *inter alia:* ''This cause comes on for hearing upon . . . the pleadings and . . . the evidence of the plaintiff, together with the exhibits thereto, and the evidence of defendants and defendants' witnesses, together with exhibits thereto, and arguments of counsel, and other proof, matters and things before the court; and . . .'' The decree thus affirmatively shows that oral testimony and certain exhibits were before the chancery court. None of this oral testimony and none of the exhibits is in the transcript here, which consists only of the pleadings and the decree of the chancery court. There is an entire failure to bring forward any of the oral testimony or the exhibits; and so we are forced to apply the long-established rule that where the chancery decree appealed from recites that oral testimony was heard, and the testimony is not brought up on appeal, then a conclusive presumption exists that the evidence sustains the decree. *Rowe v.*

670

*Allison,* 87 Ark. 206, 112 S. W. 395; *Beecher* v. *Beecher,* 83 Ark. 424, 104 S. W. 156; *Murphy* v. *Citizens Bank,* 84 Ark. 100, 104 S. W. 187, 934; *Tedford* v. *Chick,* 114 Ark. 167, 169 S. W. 769.

### 3. Correctness of the Decree.

Assuming that the testimony supported the decree, we now examine the decree to determine its correctness, *as tested by its own recitals.* Ordinarily the words "nephews and nieces," when unambiguous under the facts, do not include grandnephews and grandnieces. But in ambiguous cases, the words "nephews and nieces" may include also grandnephews and grandnieces. In her will, the testatrix twice (in Items 3 and 5) referred to Martha Dingle as the niece of the testatrix, and referred to William P. Dingle as the nephew of the testatrix. In truth, William P. Dingle was the nephew of the testatrix, and Martha Dingle was the daughter of William P. Dingle, and was thus the grandniece of the testatrix. In referring to a grandniece as a niece, the testatrix thus made her own dictionary. When she used the word "niece" to refer to a grandniece in two places in the will, she certainly created an ambiguity as to whether she meant grandnieces generally to be included in the word "nieces" in the residuary clause. This ambiguity in the use of the words "nephews and nieces" allowed oral testimony to be introduced to determine the beneficiaries. In the case of *McDonald* v. *Shaw,* 81 Ark. 235, 98 S. W. 952, this court said: "It is an elementary rule of construction that a bequest or devise will not fail because of a mere inaccuracy in the designation of the beneficiary, where the meaning of the testator can be gathered with reasonable certainty from the instrument itself, or where the identity of the object of his bounty can be shown by extrinsic evidence; and such evidence is always admissible for the purpose of identifying the beneficiary, where there is uncertainty or ambiguity in the designation." See, also, *Duensing* v. *Duensing,* 112 Ark. 362, 165 S. W. 956, and *Combs* v. *Combs,* 172 Ark. 1073, 291 S. W. 818, and 69 C. J. 146.

We, therefore, hold that the will in this case showed an ambiguity, and that parol testimony was admissible to ascertain the intention of the testatrix. The case of *Finch* v. *Hunter,* 148 Ark. 482, 230 S. W. 553, is not in conflict with this holding. In that case in discussing whether "children" meant "grandchildren," this court pointed out that the will there involved had no ambiguity; and Mr. Justice Hart, speaking for the court, said: "There are no words in the context, however, to indicate that the word 'children' is used in other than its ordinary and natural meaning. The testator left a bequest to each of his grandchildren, and specifically designated them as his grandsons."

Learned counsel on each side have favored us with exhaustive briefs reviewing the English cases as well as the American cases on whether the words "nephews and nieces" will be held to include grandnephews and grandnieces. Most of these cases are cited and discussed in the scope note in Ann. Cas. 1913E (Vol. 30), p. 589, on the subject: "Niece or nephew as including grandniece or grandnephew." In that scope note it is stated: "The meaning of the word 'niece' and 'nephew' has often been extended to include grandniece or grandnephew when the context of the will and the evident intention of the testator called for such extension."

Also in Jarman on Wills, 7th Ed., Vol. 3, p. 1609, it is stated: "It seems to follow, as a *prima facie* rule of construction, that if a testator uses such a word as nephew or cousin in one part of his will in the secondary or inaccurate sense, the probability is that he uses it in that sense throughout his will, but this construction can of course be excluded by the context. There is in truth no hard and fast rule, and each case depends on the terms of the will and the facts known to the testator."

And in 69 C. J. 203, the rule is stated: "Ordinarily the terms 'nephews and nieces' as used to designate beneficiaries taking under a will do not include grandnephews and grandnieces, although the contrary is true where the intention of the testator is manifest, as where in the will grandnephews and grandnieces are described as

nephews and nieces. Where the testator's intention is manifest, the term 'niece' may include a great-grand-niece.''

The briefs filed by counsel on both sides contain many other cases showing the extent to which counsel have gone in the preparation of the briefs herein; but we find it unnecessary to review exhaustively these cases. Suffice it to say that there are cases which hold that ''nephews and nieces'' may be shown to mean ''grand-nephews and grandnieces.'' The chancery court, with proper evidence before it, could have reached the conclusion that it did reach; and in the absence of the oral testimony in the transcript here, we cannot say that the decree of the chancery court was in error.

It follows that the decree is affirmed.