CRITTENDEN v. LYTLE.

4-9897 253 S. W. 2d 361

Opinion delivered December 8, 1952.

*Reinberger & Eilbott,* for appellant.

*Coleman, Gantt & Ramsay,* for appellee.

WARD, Justice. The only question involved in this appeal is the interpretation of the words "my heirs" found in the last will and testament of Virginia C. Wilson.

Mrs. Wilson died on December 4, 1950, leaving a will, the material portion of which is set out below:

"II. I will, devise and bequeath to Martin Wilson and Frank Wilson, brothers of my deceased husband, R. K. Wilson, and to Cora Wilson and Mrs. Flora Norton, sisters of my deceased husband, R. K. Wilson, an undivided one-half of the remainder of my properties of every kind and nature, which I may own at the time of my death, in equal shares, that is, to each of said four devisees an undivided one-eighth interest in said remainder of my estate; and the other half of said remainder to *my heirs.*" [Emphasis supplied.]

The reason for the insertion of the words "the remainder of my property" in the above portion of her will was that the first paragraph directed the payment of all her debts and funeral expenses, and no other significance attaches.

Mrs. Wilson died seized and possessed of many hundreds of acres of valuable real estate including residential and business property. She also owned, at her death, a large amount of personal property, but it is not involved in this litigation.

The heirs of Mrs. Wilson are numerous and are determined by a somewhat involved process, but there is no dispute between the parties as to who they are, and so for the purpose of this opinion, the delineation presently set out will suffice.

Mrs. Wilson never had any children, she left surviving no brothers or sisters [nor the descendants of any], and she was predeceased by her parents and grandparents. Her only heirs, therefore, were those of her father and mother. On her father's side her only heirs were his four brothers and one sister [or the heirs of those that were deceased].

For all practical purposes and for clarity and convenience we may hereafter speak of Mrs. Wilson as having left five heirs on her father's side. These five heirs [or sets of heirs] are the appellants in this case.

Mrs. Wilson's mother had no brothers and only one sister, and from this line of ancestors there is only one heir. This one heir is R. S. Lytle, who is the appellee here. So, in the manner that we speak of five heirs on her paternal side, we can also speak of one heir on Mrs. Wilson's maternal side.

It is conceded by both sides that the will effectively vested the brothers and sisters of Mrs. Wilson's husband with an undivided one-half interest in all her real estate, leaving the other undivided one-half interest to the six heirs [or sets of heirs] set forth above. Hereafter we shall refer to the undivided one-half interest in Mrs. Wilson's real property which she left to her heirs as ''the estate'' or ''her estate.''

The question presented to us is whether the estate shall be divided among the heirs of the deceased in six equal portions, as contended by appellants, or one-half to the heirs on her father's side and one-half to the heir on her mother's side as contended by that heir who is also the appellee.

The question of the proper division of the estate arose out of a partition suit filed in Chancery Court by the four brothers and sisters of the deceased's husband who held togther the undivided one-half interest. In the process of litigation it was found that the land could not be divided in kind so a sale was ordered and had, and the division now relates to the proceeds of the sale which is treated as realty. The Chancellor held that the appellee, R. S. Lytle, as the only heir on the maternal side, was entitled to one-half of the estate and that the five heirs on the paternal side were together entitled to the other half. It is this decision that appellants seek to reverse, contending that one-sixth of the proceeds of the sale should go to each of the said six heirs [or sets of heirs].

Appellants base their persuasive argument on the well-established rule for the construction of wills as set forth in numerous texts and decisions, citing 57 Am. Jur., p. 726, and *Hoyle* v. *Baddour,* '193 Ark. 233, 98 S. W. 2d 959; *Parker* v. *Wilson,* 98 Ark. 553, 136 S. W. 981, and *Union & Mercantile Trust Co.* v. *(Moore) Hudson,* 143 Ark. 519, 220 S. W. 820. The general rule referred to, with which we are in complete accord, is, broadly stated, that courts must ascertain the intent of the testator and give effect thereto, and ordinarily the intent must be derived from the language of the will. The rule has been stated many different ways as is well illustrated by short quotations from the above citations. In Am. Jur. we find "the chief object and purpose in construing a will is to ascertain and give effect to the intention of the testator" and "if the testator's intent can be clearly perceived or ascertained it must prevail." In the opinion in the *Hoyle* case we find this: "We have frequently held that in the construction of wills courts will endeavor to arrive at the intention of the testator, which intention is generally to be gathered from the language used." The *Parker* case states the rule this way: "In construing the provisions of a will, the intention of the maker is first to be ascertained, and, when not at variance with recognized rules of law, must govern. The intention of the testator must be gathered from all parts of the will . . ."

Based on this rule of "intent" appellants point out several reasons to support their view that Mrs. Wilson intended her property to be divided in six equal moieties. First, she specified that each brother and sister of her husband should take equally. Second, it is not reasonable to think Mrs. Wilson intended for appellee, who was only a cousin, to get a larger portion of her estate than one of her uncles. Third, the fact that Mrs. Wilson divided her estate equally between her heirs and her husband's heirs, and then gave equal portions to each of the latter, evidences a clear intent on her part to treat all her heirs with an impartiality inconsistent with the Chancellor's decision.

We are not in accord with appellants' contention. In the first place it seems to us there is little in the language of the will that evidences the intention attributed to the testatrix. On the other hand, it could be argued with some reason that the testatrix evidenced an intent *not* to divide her property among her heirs in equal portions since she failed to so state, and that such failure was no oversight since she did specify an equal division among the heirs of her husband. The principal reason, however, why we cannot agree with appellants' view is that there are other rules, in addition to the one mentioned, governing the interpretation of wills which we think apply here and which compel an affirmance of this case.

One such rule is that where the language of a will is clear there is no necessity for trying to arrive at any intention other than that expressed by its language. In the case of *Park* v. *Holloman,* 210 Ark. 288, 195 S. W. 2d 546, we find this rule forcefully stated in the following words:

"The polestar of the court, in construing a will, should always be the intention of the testator; and the will itself is ordinarily the only place to which the court should resort to find such intention. If it be in the will expressed in language that is clear and unmistakable the court should go no further, but should put in effect the intention of the testator, as thus clearly set forth in his will."

It seems to us that there is nothing unusual or ambiguous about the language used in Mrs. Wilson's will, as examination of the will discloses. The only language in the will which might cause any uncertainty are the words "my heirs." It may, in fact, be possible that some people, including the testator in this instance, do not comprehend the full import of these words, but it cannot be said they are not commonly used. Certainly there is nothing in the will which indicates Mrs. Wilson did not understand the meaning of the words she used, and we must therefore presume that she did. In the

early case of *Moody* v. *Walker,* 3 Ark. 147, this court said:

"When technical phrases or terms of art are used, it is fair to presume that the testator understood their meaning, and that they expressed the intention of his will, according to their import and signification. When certain terms or words have by repeated adjudication received a precise, definite and legal construction, if the testator in making his will use such terms or similar expressions, they shall be construed according to their legal effect . . ."

The words "my heirs" used in the will, like the word "heir," have a technical meaning which has been many times defined by the courts. Their meaning in a will is well stated in 57 Am. Jur., 908, § 1369, as "those persons who would take the property of the person designated as ancestor in case of his death intestate." The same definition of the word "heir" when used in wills and other legal documents has been given, sometimes with different phrasing, by the courts of this and other states. See *Emery* v. *Emery,* 325 Ill. 212, 156 N. E. 364; *In Re Beck's Estate,* 225 Pa. 578, 74 A. 607; *Johnson* v. *Knights of Honor,* 53 Ark. 255, 13 S. W. 794, 8 L. R. A. 732; *Powell* v. *Hayes,* 176 Ark. 660, 3 S. W. 2d 974; and *Dyer* v. *Lane,* 202 Ark. 571, 151 S. W. 2d 678.

By giving the words "my heirs" in Mrs. Wilson's will the meaning described above, it follows that her estate must go to the same persons to whom it would have gone had she died leaving no will. If she had left no will the distribution of her state would have been governed by Ark. Stat., § 61-111. Under this statute and under the facts in this case, one-half must go to appellants and the other half must go to appellee, R. S. Lytle.

It is conceivable that in some instances apparent inequities may result from construing certain words or phrases according to their recognized technical meanings, but, in the language used in *Moody* v. *Walker, supra,* ". . . if this was not the case, titles to estates would be daily unsettled, to the ruin of thousands. It

is all-important to the interest of society that the rules of property should be definitely settled, and that they should possess uniformity and consistency."

There are instances where words used in a will should not be construed according to their technical meaning, but only where explanatory words are used to qualify them or give them a different meaning. This was recognized in *Galloway* v. *Darby*, 105 Ark. 558, 151 S. W. 1014, 44 L. R. A., N. S. 782, and in many other decisions of this court. There are no such explanatory words in the will under consideration which bring it within this exception.

Some question was raised regarding the disposition of certain ancestral property coming to the testator from the maternal side of her family, but having disposed of the main issue as we have, it is not questioned that the disposition of this property is governed by Ark. Stat., § 61-110.

No error appearing, the decree of the Chancellor is affirmed.