Shirley CHLANDA *v.* ESTATE of Milford G. FULLER

96-625                                                              932 S.W.2d 760

Supreme Court of Arkansas
Opinion delivered November 11, 1996

*Ledbetter & Associates, LTD,* by: *Thomas D. Ledbetter* and *Eichenbaum, Scott, Miller, Liles, & Hester, P.A.,* by: *Leonard L. Scott* and *Peter B. Heister,* for appellant.

*Johnny L. Nichols,* for appellee.

ROBERT H. DUDLEY, Justice. This case involves the construc-

tion of a will. Milford G. Fuller and Evelyn Coleman were married in 1944 and had no children during their lengthy marriage. In 1961, they contemporaneously executed wills. Evelyn Coleman Fuller died on December 19, 1994. Her will, which was admitted to probate, left all of her estate to her husband, Milford G. Fuller. Milford G. Fuller died on January 23, 1995. His heirs are eleven cousins and an aunt. Three of the cousins petitioned the probate court to appoint coadministrators. Their petition stated that Milford Fuller died intestate. The probate court appointed coadministrators. Shirley Chlanda, who was the sister of Evelyn Fuller, subsequently filed a petition to admit Milford G. Fuller's will to probate. His will was admitted.

Paragraph three of Milford G. Fuller's will is set out below with the contested words highlighted:

> In the event my said wife should predecease me or our deaths should occur so closely one to the other that it would be impossible to determine which deceased first, I give, bequeath, devise, and covey unto my mother and father, Luther Arnold Fuller and Clara Ethel Fuller of Harrison, Arkansas, and my wife's mother and father, Thomas S. Coleman and Julia Coleman of Herculaneum, Missouri, all the property that I die seized of be it real, personal, equitable or mixed, and wherever located. My mother and father, or the survivor thereof, to share equally with *my wife's mother and father, or the survivor thereof,* in said Estate. [Emphasis supplied.]

Petitioner Shirley Chlanda is the daughter of the Thomas S. Coleman and Julia Coleman. Both her parents and Milford G. Fuller's parents, Luther Arnold Fuller and Clara Ethel Fuller, predeceased Milford G. Fuller. In her petition, she asked the probate court to construe the words "my wife's mother and father, or the survivor thereof," to mean the heirs of her mother and father. The coadministrators objected on the ground that the will was definite and certain. They filed a motion for summary judgment in which they contended that the will clearly meant that the estate was to go to the wife's parents or whichever of them survived the other. The trial court granted the coadministrator's motion for summary judgment. Shirley Chlanda appeals. We affirm the grant of summary judgment.

The primary issue before the probate court was whether the words "wife's mother and father, or the survivor thereof," are uncertain or ambiguous. The trial court ruled:

> When construing a testamentary document to arrive at the testator's intention, one does not look at the intention that existed in the testator's mind at the time of execution, but that which is expressed by the language of the instrument. . . . Parol evidence is admissible only for the purpose of showing the meaning of the words used in the will when they are ambiguous, and not to show what the testator intended as distinguished from his expressed words.

> [T]he Court would have to find that the term "survivor" is ambiguous or uncertain. The Court cannot, and in order to realize the desire of the petitioner the Court would have to change the word from singular to the plural, and impute words to the documents to create a new group of beneficiaries not otherwise denominated, referred to, or implied in any way. The Court would, in essence, be called upon to engraft a new document to the one at bar. [Citations omitted.]

On appeal, Shirley Chlanda's first assignment is that the probate court erred in ruling that the will was definite and certain and that extraneous evidence could not be admitted to show the intent of the testator. She contends that surrounding circumstances should be considered even in determining whether there is an uncertainty. The probate court ruled that the testator's intent could be gathered from the will itself. *See Armstrong* v. *Butler*, 262 Ark. 31, 553 S.W.2d 453 (1977). The ruling was correct. The language "my wife's mother and father, or the survivor thereof," in the ordinary usage of the words, means to the survivor of the mother and father. This common sense use of the English language is buttressed by the fact that the will was drawn by a lawyer, and the word "heirs" could have easily have been substituted for the word "survivor" if that were the intent of the testator. *See In re Miner's Estate*, 129 Vt. 484, 282 A.2d 827 (1971). Contrary to Chlanda's argument, a probate court is not required to resort to forced construction and extend the meaning of the language in the will by speculating about surrounding circumstances. *See Acklin* v. *Riddell*, 42 Ark. App. 230, 856 S.W.2d 322 (1993). The rules of construction are used to determine the testator's intent when it is not clear from the face of the will

"rather than because the testator knew of such rules and principles and adopted them deliberately." William J. Bowe, *Page on The Law of Wills*, § 30.4 at 14-15 (1961 & Supp. 1996). Extrinsic evidence is not permissible to show intent in disregard of the express words used in the will. *In re Estate of Conover*, 304 Ark. 268, 801 S.W.2d 299 (1990). It is presumed that the testator knew the contents of the will that he executed. *Armstrong* v. *Butler*, 262 Ark. at 39, 553 S.W.2d at 457.

Shirley Chlanda next argues that a holding that the language is definite and certain will result in partial intestacy, and a court should construe a will to avoid partial intestacy. It is correct to state that there is a presumption in the rules of construction that "a person who takes the time and effort to make a will does not desire partial intestacy." *Kidd* v. *Sparks*, 276 Ark. 85, 90, 633 S.W.2d 13, 16 (1982). However, a probate court should not resort to the rules of construction unless the intent of the testator, as shown by his expressed words, is in doubt. *Id.* at 89-90, 633 S.W.2d at 16; *see also Armstrong* v. *Butler*, 262 Ark. at 39, 553 S.W.2d at 457.

Shirley Chlanda next contends that, in any event, extrinsic evidence is admissible to identify a beneficiary. Again, this rule of construction is not used unless there is some ambiguity. An appropriate application of the use of the rule to identify beneficiaries is found in *Jesseph* v. *Leveridge*, 205 Ark. 665, 170 S.W.2d 71 (1943), where the testatrix bequeathed jewelry to "her niece," but that person was actually her grandniece. *Id.* at 666, 170 S.W.2d at 72. The chancellor correctly found that "nephews and nieces," as used in the will, was ambiguous. *Id.* at 667, 170 S.W.2d at 74. Here, there is no such ambiguity.

In the next point of appeal Chlanda argues that the word "survivor" may mean heirs or issue, and this is especially true if the word "thereof" is added. We are not aware of any Arkansas cases addressing the subject, but the meaning of the word "survivor" has been the subject of litigation in courts across the United States for many years. Appellant is correct in stating that in some cases the word "survivor" has been interpreted to mean heirs or issue, but in almost all of those cases there is something else in the will that indicates such an intent. *See* A.M. Swarthout, Annotation, *Gift Over to Surviving Members of a Group of Share of Deceased Member as Creating Absolute Interest in Last Survivor*, 166 A.L.R. 1272, 1291 (1947). The clear majority of cases cited in the annotation hold that

the term "survivor" refers to the person among the designated class who outlives the other. *See, e.g., Estate of Mohr* v. *Ernst,* 7 Cal. App. 3d, 86 Cal. Rptr. 731 (1970).

■ Chlanda next contends that the probate court erred in granting summary judgment. The standard of review for a grant of summary judgment is familiar. Summary judgment should only be granted when it is clear that there are no disputed issues of material fact. *Gann* v. *Parker,* 315 Ark. 107, 865 S.W.2d 282 (1993). It is appropriate, however, to sustain a grant of summary judgment if the record before the trial court "shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Tullock* v. *Eck,* 311 Ark. 564, 567, 845 S.W.2d 517, 519 (1993); Ark. R. Civ. P. 56(c).

■ Chlanda, citing *Ferguson* v. *The Order of United Commercial Travelers of America,* 35 Ark. App. 100, 814 S.W.2d 267 (1991) (supplemental opinion on denial of rehearing), notes that questions of intent are particularly inappropriate for summary judgment. It is true that, as a general matter, questions of intent are inappropriate for summary judgment, but, where, from the face of a written instrument, there is no doubt about the meaning of the instrument, summary judgment is appropriate. Here, because there was no facial ambiguity, there was no genuine issue of material fact about whether parol evidence could be admitted, and summary judgment was proper.

■ Chlanda next argues that we should reverse and remand because the probate court did not allow discovery. The argument is without merit for either of two reasons. First, the abstract does not contain a summary of an order denying discovery, and we are not certain that the probate court made a ruling on this issue. It is incumbent upon an appellant to produce a record sufficient to demonstrate error, *Mayo* v. *State,* 322 Ark. 383, 920 S.W.2d 659 (1995), and the record on appeal is confined to that which is abstracted. *Grinning* v. *City of Pine Bluff,* 322 Ark. 45, 907 S.W.2d 690 (1995). We have repeatedly held that the burden of obtaining a ruling is upon the movant and that unresolved questions and objections are waived and may not be relied upon on appeal. *Johnson* v. *State,* 303 Ark. 12, 792 S.W.2d 863 (1990). Second, the discovery request related to extrinsic evidence. Extrinsic evidence was not considered on the motion for summary judgment; thus, even if the probate court did rule, appellant could not have been prejudiced.

Finally, Chlanda asks us to follow the reasoning of the Supreme Court of Texas in reversing a grant of summary judgment in *White* v. *Moore*, 31 Tex. Sup. Ct. J. 662, 760 S.W.2d 242 (1988). We decline to do so, for the language used in that will is materially different from the language in the will before us. In that case, the decedent left her estate "to my six children [naming them] and to the survivor or survivors of them at the time of my death, share and share alike." The Supreme Court of Texas held that summary judgment should not have been granted because the word "survivors" was sufficiently ambiguous to require extrinsic proof. The majority opinion noted that the word "survivors" might have been intended to mean "heirs." There, the words did not narrow the class named to one survivor of the class, but rather left it to the survivors (plural) at the time of death of the testator. Here, the words used are "my wife's mother and father, or the survivor thereof." This is an unmistakable declaration that the two individuals named in the class are to enjoy the right of survivorship in the event of the death of one of them. As such, the chancellor was correct in the granting of summary judgment as to the meaning and effect of the will.

Affirmed.