C.J. CARPENTER *v.* Oras MILLER

CA 00-5                                           26 S.W.3d 135

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered August 30, 2000

*John Adam Harkey*, for appellant.

*Murphy, Post, Thompson, Arnold & Skinner*, by: *Blair Arnold*, for appellee.

K. MAX KOONCE, II, Judge. In this case, we are asked to review the probate judge's interpretation of the will of Eunice Carpenter, deceased. The judge found that the will unambiguously devised the residue of the decedent's estate to five particular individuals. Appellant C.J. Carpenter, a co-executor of the decedent's estate, argues that the judge erred in determining that no ambiguity existed. We affirm.

Eunice Carpenter died in 1999 leaving an estate valued at approximately $361,000. Her husband, Hubert Carpenter, predeceased her. In her will, decedent devised virtually all of her property to her husband but declared that, should he predecease her, her estate would pass as provided in articles four and five of her will. Article four bequeathed $1,000 to each of twenty-three nieces and nephews. Article five then devised the residue of the estate as follows:

In the event that my husband, HUBERT C. CARPENTER, should predecease me, after the payment of the TWENTY-THREE THOUSAND DOLLARS ($23,000.00) above-mentioned in paragraph "IV", I hereby give, devise and bequeath my entire estate to ERNEST L. CARPENTER; BRYAN A. CARPENTER; ORILLA CARPENTER PINKSTON and PAUL L. CHAUDOIN.

In the event that either of the above-named brothers of HUBERT C. CARPENTER, or the above-named sister of HUBERT C. CARPENTER should predecease me, then in that event his or her interest shall lapse and the surviving beneficiaries of the FOUR (4) beneficiaries above-named shall take the interest that the deceased beneficiary would have received had he or she survived me; except that in the event of the death of PAUL L. CHAUDOIN, his interest shall not lapse, but the interest that he would have taken had he survived my death shall be given to the following parties, share and share alike.

1. KENNETH CHAUDOIN, my nephew;

2. ORAS MILLER, my nephew;

3. J. C. MILLER, my nephew;

4. LILLIAN MILLER PROVINCE, my niece; and

5. ELLA JEAN MILLER VEST, my niece.

Of the four primary beneficiaries listed above, three of them — Ernest Carpenter, Bryan Carpenter, and Orilla Carpenter Pinkston — were siblings of the decedent's late husband. The fourth primary beneficiary — Paul Chaudoin — was the decedent's brother. The five individuals listed as taking Paul Chaudoin's interest in the event of his death were the decedent's only heirs-at-law at the time of her death. They will be referred to hereafter as the "Chaudoin heirs."

The language at issue in this case is the phrase which reads, "in that event [that Ernest, Orilla, or Bryan should predecease the testatrix] his or her interest shall lapse and the surviving beneficiaries of the FOUR (4) beneficiaries above-named shall take the interest that the deceased beneficiary would have received had he or she survived me." The language is important because all four of the primary beneficiaries predeceased Eunice Carpenter — Ernest in 1991, Orillia in 1996, Paul in 1997, and Bryan in 1998.

Appellant, who is co-executor of the estate and whose interest is aligned with the children of Ernest Carpenter, Bryan Carpenter, and Orilla Pinkston (hereafter "Carpenter heirs"), argues that article five is ambiguous and may be interpreted to mean that, upon the deaths of Ernest, Bryan, and Orilla, each of their one-fourth interests passed to their own heirs or legatees. Under this interpretation, the Carpenter heirs would receive three-fourths of the residue of the estate and the five individuals listed as taking Paul's interest would receive one-fourth. Appellee, who is the other co-executor of the estate and whose interest is aligned with the Chaudoin heirs, argues that the will is susceptible to only two interpretations, either of which would result in the Chaudoin heirs receiving the entire residuary estate. His first interpretation is that the shares bequeathed to Ernest, Orilla, and Bryan lapsed upon their deaths, in which case their shares passed to the Chaudoin heirs by intestate succession. His alternative interpretation is that, upon the death of each primary beneficiary other than Paul, that beneficiary's bequest lapsed and served to increase the shares of the surviving primary beneficiaries. The practical result of this interpretation is that, upon the death of Ernest in 1991, his bequest lapsed and served to increase the shares of Orilla, Paul, and Bryan so that each of them was then beneficiary of a one-third interest; upon the death of Orilla in 1996, her bequest lapsed and served to increase the shares of Paul and Bryan so that each of them was then a beneficiary of a one-half interest; upon Paul's death in 1997, his bequest did not lapse because the Chaudoin heirs became entitled to take Paul's share; and then upon Bryan's death in 1997, his share lapsed and the Chaudoin heirs, who stand in Paul's stead, became the sole beneficiaries inasmuch as Paul's share is determined as if Paul had survived the testatrix, and had he survived her, he would have been the sole surviving primary beneficiary.

After a hearing on the issue, the probate judge determined that there was no ambiguity in the will and that the Chaudoin heirs were the beneficiaries of the entire residue of the estate. Appellant appeals from that ruling.

Probate cases are reviewed *de novo* on appeal. *Gifford v. Estate of Gifford*, 305 Ark. 46, 805 S.W.2d 71 (1991). However, we do not reverse a probate court's findings unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence

is left with the definite and firm conviction that a mistake has been committed. *Adkinson v. Kilgore,* 62 Ark. App. 247, 970 S.W.2d 327 (1998). In the interpretation of wills, the paramount principle is that the intent of the testator governs. *In Re: Estate of Harp,* 316 Ark. 761, 875 S.W.2d 490 (1994). The testator's intent is to be gathered from the four corners of the instrument itself. *Id.* However, extrinsic evidence may be received on the issue of the testator's intent if the terms of the will are ambiguous. *See Burnett v. First Commercial Trust Co.,* 327 Ark. 430, 939 S.W.2d 827 (1997). An ambiguity has been defined as an indistinctness or uncertainty of meaning of an expression in a written instrument. *See id.*

■ ■ We hold that the language in article five is not ambiguous. It provides that, upon the deaths of Ernest, Orilla, and Bryan, their interests shall "lapse" if they predecease the testatrix. The term "lapse" is a technical one, with a specific meaning in probate law. It means that a devise fails or takes no effect. *See* BLACK'S LAW DICTIONARY 407–08 (5th ed. 1979). Thus, a lapsed devise will not pass to a devisee's heirs. Consistent with this, Arkansas law provides that, when a bequest to a residuary legatee lapses, his interest passes to the other residuary legatees in proportion to their interests. *See Crittenden v. Lytle,* 221 Ark. 302, 253 S.W.2d 361 (1952). The technical meaning of the term "lapse" as used in this case means that any bequest to Ernest, Bryan, or Orilla would cease to exist if they predeceased the testatrix and would not be passed on to their respective heirs but would increase the shares of the remaining residuary legatees.

■ We also hold that the decedent's express declaration that, upon the deaths of Ernest, Bryan, or Orilla, his or her interest would pass to "the surviving beneficiaries of the FOUR (4) beneficiaries above-named" is not ambiguous. The phrase refers to the survivors from among the four primary beneficiaries, *i.e.,* upon Ernest's death in 1991, the interest he was bequeathed lapsed and served to increase the shares of Bryan, and Orilla, and Paul, who were the "surviving beneficiaries of the four." The language used by the decedent is similar to that used in *Chlanda v. Estate of Fuller,* 326 Ark. 551, 932 S.W.2d 760 (1996). There, the testator declared that his estate would be shared equally among certain beneficiaries "or the survivor thereof." The supreme court held that the words "the survivor thereof" did not mean the heirs of any beneficiary but

unambiguously referred to the person among the designated class who outlived the other.

Affirmed.

ROBBINS, C.J., and JENNINGS, MEADS, and ROAF, JJ., agree.

STROUD, J., dissents.

JOHN F. STROUD, Judge, dissenting. I disagree with the majority's conclusion that article five of the will is unambiguous. It is susceptible to at least two and possibly three interpretations. Even appellee, in his brief, suggests two possible interpretations of the will. Both of his interpretations and the interpretation suggested by appellant are reasonable and merit further exploration with the aid of extrinsic evidence, especially in light of the complex and somewhat confusing language used by the testatrix.

The majority relies in part on the decedent's use of the term "lapse" to describe what would happen to the interests of those who predeceased her. Although it is possible that she meant to employ this term in its technical sense, it is equally possible that she was using it in a more generic sense. This is evidenced by the fact that, soon after declaring that her bequests to Ernest, Bryan, and Orilla would lapse, she felt the need to designate those to whom their lapsed interests would pass. If she was using "lapse" in its technical sense, her instruction that the lapsed interest would pass to the "surviving beneficiaries of the four" was superfluous. The confusion in the use of the word "lapse" is further amplified by the next paragraph of the will. The testatrix again uses the word "lapse," but this time says "in the event of the death of Paul L. Chaudoin, his interest shall not lapse...." Although providing that the bequest shall *not* lapse, she also proceeds to name who shall receive the bequest.

In light of the foregoing, it is worth considering that the testatrix was not speaking technically when using that term. Technical terms need not be construed in their technical sense when the testator uses explanatory words to give them a different meaning. *Crittenden v. Lytle*, 221 Ark. 302, 253 S.W.2d 361 (1952).

I also disagree that the *Chlanda* case is dispositive here. The testator in that case used different language than the testatrix used in

this case. Our testatrix did not refer to "the survivors of the four" or "the survivors among the four" but "the *surviving beneficiaries* of the four." (Emphasis added.) That language creates an ambiguity not present in *Chlanda*.