Maurice HARRISON, Executor of the Estate of Worth Harrison *v.*
Ronald HARRISON and Robert Harrison

CA 02-1343                                      120 S.W.3d 144

Court of Appeals of Arkansas
Division III
Opinion delivered June 18, 2003

*Phil Stratton,* for appellant.

*Graddy & Adkisson, P.A.,* by: *William C. Adkisson,* for appellees.

TERRY CRABTREE, Judge. This appeal challenges the Faulkner County Circuit Court's order holding that part of the estate of Worth Harrison, who died in 1995, must be distributed according to the law applicable to intestates, denying the executor, appellant Maurice Harrison's, petition for an accounting of alleged partnership assets, and awarding attorney's fees to appellee Ronald Harrison.

## Procedural History

Worth's 1992 will was admitted to probate. In paragraph II, it mentioned his children, appellant Maurice Harrison, appellees Ronald Harrison and Robert Harrison, and Peggy Harrison:

> I do hereby recognize Ronald Harrison and Robert Harrison, as my natural heirs, however, and nonetheless, I decline to give, devise or bequeath any of estate, real or personal, to said heirs. I do hereby recognize Maurice Harrison, and Peggy Ann Harrison as my natural heirs, however, and nonetheless, I decline to give, devise or bequeath any of my estate to them, except as herein directed.

In paragraph III, Worth gave a life estate in his home and its surrounding eighty acres to his wife, Mamie Harrison. He also gave her a one-third interest in his personal estate; the remaining two-thirds were bequeathed to Maurice and Peggy. In paragraph IV, he devised real property in Faulkner County to Peggy.

The wording of paragraph V is the basis of this dispute. It stated:

> In the event that Mamie Harrison, should predecease me, I then give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal and wherever situated, after payment therefrom of all estate, death and inheritance taxes due from my estate, to my son, Maurice Harrison.

Mamie, however, did not predecease Worth, and the lack of a residuary clause disposing of Worth's estate if Mamie survived Worth prompted Ronald to file this action for construction of the will. In his petition, Ronald asserted that the residue of Worth's estate should be distributed according to the rules of intestate succession (divided equally to his sole heirs, Ronald, Robert, Maurice, and Peggy). Maurice, however, contended that Worth intended to disinherit Ronald and Robert regardless of whether Mamie survived him. He urged the judge to construe the will in accordance with the presumption against intestacy and to excise the phrase "in the event that Mamie Harrison should predecease me" from paragraph V.

Maurice also filed a counterclaim against Ronald, alleging that, at the time of his death, Worth owned a one-half interest in a cattle-farming partnership, and requesting an accounting from Ronald. Maurice also included this purported one-half interest in the estate's inventory. In response, Ronald argued that the partnership had not operated since 1972, when he had purchased Worth's interest, for which he had made payments to Worth from 1972 to 1984. Ronald moved for an award of attorney's fees and costs pursuant to Ark. R. Civ. P. 11, arguing that appellant's petition for an accounting lacked any factual or legal basis and was intended to punish Ronald for filing the petition to construe the will.

The judge issued findings of fact and conclusions of law addressing the construction of the will and the petition for a partnership accounting. He stated:

> The Court is bound by rules of construction of wills as provided by statute and precedent and is aware of the strong presumption against partial intestacy. The cardinal principle of will interpretation is that the testator's intent governs and that intention is to be gathered from the four corners of the instrument. *Gifford v. Estate of Gifford*, 305 Ark. 46, 805 S.W.2d 71 (1991). If at all possible we will broaden or enlarge a residuary clause to avoid intestacy. *Cook v. Estate of Seeman*, 314 Ark. 1, 858 S.W.2d 114 (1993). The purpose of construction is to arrive at the intention of the testator; but that intention is not that which existed in the mind of the testator, but that which is expressed by

the language of the will. *Park v. Holloman*, 219 Ark. 288, 195 S.W.2d 546 (1946).

> Viewing the will on its four corners, the Court finds that there is no residuary clause in the testator's will. If it was the intent of the testator to disinherit all of his children except Maurice Harrison if he died before Mamie Harrison, the will fails to so provide. Whether it was a mistake by the testator or the attorney preparing the will, the Court must look at the language expressed in the will and not what might have been his intent. Further, Paragraph V could be construed to disinherit all the testator's children, including Maurice. The testator's intent is not clear and the Court declines to re-write the will by excising clear language of the will.

> Therefore, that part of the estate not disposed of by the will shall be distributed as provided by law with respect to the estates of intestates.

The judge also found that the purported partnership terminated more than twenty years before Worth died and stated that the executor's claim was "without merit."

Ronald then moved for an award of attorney's fees under Ark. Code Ann. §§ 16-22-308 and 16-22-309 (Repl. 1999). In his order, which incorporated his findings of fact and conclusions of law, the judge awarded Ronald $5,000 in attorney's fees without explaining the basis of the award.

### Arguments

Maurice contends that the trial judge erred in finding that the residue of the estate must pass according to the law of intestacy; in awarding attorney's fees to Ronald; and in admitting into evidence some documents offered by Ronald to rebut Maurice's claim that the estate held an interest in the cattle farm.

### The Will

Maurice argues that the trial judge erred in refusing to excise the phrase "in the event that Mamie Harrison should predecease me" from paragraph V of the will. He contends that Worth obviously intended to disinherit Ronald and Robert, that this phrase is "an absurdity," and that the will should be construed as leaving

the residue of the estate to him alone. He relies on the rules of law that a testator is presumed to dispose of his entire estate and that wills are to be interpreted so as to avoid partial intestacy unless the language compels a different result. Maurice states: "In this case we have a perfectly clear residuary clause clouded only by an absurd introductory phrase."

We agree with the trial judge's recitation of the law. In the interpretation of wills, the paramount principle is that the intent of the testator governs. *Carpenter v. Miller*, 71 Ark. App. 5, 26 S.W.3d 135 (2000). The testator's intent is to be gathered from the four corners of the instrument itself. *Id*. However, extrinsic evidence may be received on the issue of the testator's intent if the terms of the will are ambiguous. *Edwards v. Farm Bureau Mut. Ins. Co.*, 308 Ark. 349, 823 S.W.2d 903 (1992); *Carpenter v. Miller, supra*. An ambiguity has been defined as an indistinctness or uncertainty of meaning of an expression in a written instrument. *Carpenter v. Miller, supra*. There is a strong presumption against partial intestacy, and a will is to be interpreted so as to avoid it unless the language of the will compels a different result. *Rufty v. Brantly*, 204 Ark. 32, 161 S.W.2d 11 (1942). Extrinsic evidence may be admitted only for the purpose of showing the meaning of the words selected by the testator and not to show what the testator meant. *Roy v. McComb*, 232 Ark. 769, 340 S.W.2d 381 (1960). Although the use of extrinsic evidence is appropriate when the will expresses an intent, it is inappropriate when the instrument expresses no intent. *David Terrell Faith Prophet Ministries v. Estate of Varnum*, 284 Ark. 108, 681 S.W.2d 310 (1984). These principles were explained in *Park v. Holloman*, 210 Ark. 288, 291, 195 S.W.2d 546, 547 (1946):

> The function of a court in dealing with a will is purely judicial; and its sole duty and its only power in the premises is to construe and enforce the will, not to make for the testator another will which might appear to the court more equitable or more in accordance with what the court might believe to have been the testator's unexpressed intentions. "The appellants are correct in the statement that the purpose of construction is to arrive at the intention of the testator; but that intention is not that which existed in the mind of the testator, but that which is

expressed by the language of the will." *Jackson v. Robinson*, 195 Ark. 431, 112 S.W.2d 417, 418.

■ ■ The general rule against partial intestacy is an artificial rule of construction that is to be resorted to when the intent of the testator cannot be determined by giving the words used their usual meaning; it has no application when the language of the instrument compels a different result. *Armstrong v. Butler*, 262 Ark. 31, 553 S.W.2d 453 (1977). The rule against partial intestacy is not used unless there is some ambiguity. *Chlanda v. Estate of Fuller*, 326 Ark. 551, 932 S.W.2d 760 (1996). Furthermore, opposed to that aid to construction is the statutory presumption against the disherison of a child. *Armstrong v. Butler, supra.* The presumption against intestacy is subordinate to the statutory presumption against disherison. *Id.*

In *Cook v. Estate of Seeman*, 314 Ark. 1, 858 S.W.2d 114 (1993), the supreme court held that an exclusionary clause in a will lacking a residuary clause did not control intestate property held by the testatrix. The court acknowledged that the cardinal principle of will interpretation is that the testator's intent governs, that such intention is to be gathered from the four corners of the instrument, and that, if at all possible, the court will broaden or enlarge a residuary clause to avoid intestacy. Nevertheless, the court stated:

> Yet, here, there is no residuary clause disposing of the balance of the decedent's estate so intestacy as to the residence is unavoidable. Our statutes provide that any part of the estate "not disposed of by will shall be distributed as provided by law with respect to the estates of intestates." Ark. Code Ann. § 28-26-103 (1987).
>
> Although there are no Arkansas cases deciding whether the intent to disinherit should affect distribution of intestate property, we have mentioned this issue on one occasion. In *Quattlebaum v. Simmons Nat'l Bank*, 208 Ark. 66, 184 S.W.2d 911 (1945), we stated in obiter dictum, "The fact that a person is disinherited by the will does not prevent his sharing, as heir at law or distributee, in property, a legacy or devise of which has failed by lapse." *Quattlebaum*, 208 Ark. at 69, 184 S.W.2d at 913 (Citation omitted).

. . . .

We hold that although the will excluded the appellants from the estate, it did not alter their entitlement under the laws of intestate succession, provided in Ark. Code Ann. § 28-26-103 (1987).

314 Ark. at 3-4, 858 S.W.2d at 115-16.

■ Although Maurice argues otherwise, we see no meaningful distinction between this case and *Cook v. Seeman.* We also disagree with Maurice's contention that, except for the "absurdity," the will contains an effective residuary clause. On the contrary, it contains an omission because it fails to provide for disposition of the remaining assets of the estate in the event that Mamie survived Worth. Therefore, we hold that the residue was not disposed of by the will and that it should be distributed according to the law applicable to intestates. *See* Ark. Code Ann. § 28-26-103 (1987).

### Attorney's Fees

Maurice argues that the judge erred in awarding attorney's fees to Ronald under either Ark. Code Ann. § 16-22-308 or § 16-22-309 (Repl. 1999).

Arkansas Code Annotated section 16-22-308 provides for the award of attorney's fees in certain civil actions:

> In any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

Maurice argues that this statute does not provide for an award of fees for an accounting in the context of a partnership. In response, Ronald asserts that it does, because a partnership is based upon a contract. It is our conclusion that fees were properly awarded under this statute.

■ ■ A partnership is defined in Ark. Code Ann. § 4-42-201 (Repl. 2001) as "an association of two (2) or more persons to carry on as co-owners a business for profit . . . ." A partnership is a legal relationship, in the nature of a finite entity, arising out of contract. 59A AM. JUR. 2D *Partnership* § 1 (1987). It is often defined as a contract of two or more competent persons to place their money, effects, labor, and skill in business and to divide the profit and bear the loss in certain proportions. *Id.* at § 3. A partnership is a contractual relationship that may vary, in form and substance, in an almost infinite variety of ways. *Frank v. R.A. Pickens & Son Co.*, 264 Ark. 307, 572 S.W.2d 133 (1978). The accounting sought by appellant, therefore, necessarily involved the terms of the partnership agreement and the parties' rights created by that agreement. We thus affirm the award of fees. Because we hold that fees were allowed under Ark. Code Ann. § 16-22-308, it is not necessary for us to also determine whether an award of fees was justified under Ark. Code Ann. § 16-22-309.

### Admission of Evidence

As his final point, Maurice contends that the judge erred in admitting into evidence certain documents[1] that rebutted the claim that the estate had an interest in the partnership. At trial, Maurice objected to their introduction on the ground that the documents had not been appended as exhibits to the answer to his counterclaim, as required by Ark. R. Civ. P. 10(d), which provides: "A copy of any written instrument or document upon which a claim or defense is based shall be attached as an exhibit to the pleading in which such claim or defense is averred unless good cause is shown for its absence in such pleading." The documents were admitted, over Maurice's objection, as evidence supporting Ronald's claim that he purchased his father's interest in the partnership in the 1970s.

■ ■ Maurice has cited no case holding that the failure to append such exhibits to a pleading should prevent their introduction into evidence at trial. The admission of evidence is at the

---

[1] Ronald introduced canceled checks, check registers, loan documents, receipts, and tax returns to support his position.

530

discretion of the trial judge, and this court will not reverse absent an abuse of that discretion and a showing of prejudice. *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001). Maurice does not argue that these exhibits were not relevant, unauthenticated, or otherwise inadmissible. Additionally, he has demonstrated no prejudice resulting from their admission. Even without the supporting documents, Ronald's testimony was sufficient to demonstrate that the partnership terminated in 1972 and that he purchased Worth's interest. The testimony of Ronald's wife, Sue, supported his testimony. We believe that the general rule leaving this question to the trial judge's discretion should apply, and we find no abuse of discretion.

Affirmed.

STROUD, C.J., and NEAL, J., agree.