ROBERT J. GLADWIN, Judge *529 The Hempstead County Circuit Court granted summary judgment to appellee Robert M. McKamie, personal representative of the estate of Robert Samuel McKamie, deceased (the Estate), in an interpleader action filed by Southern Farm Bureau Life Insurance Company (SFB) due to competing claims for life insurance proceeds. Kindell Whisenant, the decedent's ex-spouse and the designated policy beneficiary, argues on appeal that (1) the decedent's last will and testament was not sufficient to change the beneficiary of the life insurance policy; (2) public policy should prevent the use of extrinsic evidence to identify the life insurance policy; and (3) genuine issues of material fact remain that prevent summary judgment. We affirm.
I. Facts
SFB filed its interpleader complaint against the Estate and Kindell Whisenant alleging that it had issued a life insurance policy to Robert Samuel McKamie (Sam) on January 26, 2012. Sam designated his wife, Kindell, as primary beneficiary of that policy. Sam and Kindell divorced on September 4, 2014. Thereafter, Sam executed a will on July 30, 2015, revoking any designation of beneficiaries made by him in favor of his former spouse and directing the proceeds to his father, Robert M. McKamie. The will states:
3.3. Gift(s) of Life Insurance Proceeds. I hereby give and bequeath all of my right, title and interest whatsoever to any proceeds derived from any insurance policy on my life to my father, Robert M. McKamie, regardless of my having earlier designated Kindell McKamie (aka Kindell Whisenant). Specifically, it is my intent because of my divorce from Kindell McKamie (aka Kindell Whisenant) that she be disinherited under any such life insurance policy which was purchased by my brother, John Odom. In other words, my intent as to the disposition of such life insurance proceeds is within this Last Will and Testament, and as such, it shall take precedence over any other beneficiary designations made by me in favor of my former spouse, Kindell McKamie (aka Kindell Whisenant).
Sam died on April 24, 2016. SFB alleged that both the Estate and Kindell had made claims for the life insurance proceeds. Therefore, SFB interpleaded the $250,000 life insurance proceeds under Arkansas Rule of Civil Procedure 22 (2016) and asked the circuit court to determine the party to whom the proceeds should be paid.
The Estate answered and filed a motion for summary judgment, alleging several undisputed material facts. Those facts included that Sam and Kindell were married on June 4, 2010; Sam's brother, John Odom, took Sam to the SFB office of Josh Quinn to purchase a life insurance policy on December 7, 2011; the policy was issued on January 26, 2012, showing Sam as the owner and the insured and Kindell as the primary beneficiary; John Odom gave Sam $8000 on January 17, 2012, in part to pay the initial premium of $1015 before the January 26, 2012 due date; John Odom gave Sam another $8000 on February 3, 2012, in part to pay the next monthly premium before the February 26, 2012 due date; Sam and Kindell divorced on September 4, 2014, after four years of marriage and no children were born of the marriage; Sam executed a will on July 30, 2015, disinheriting Kindell under any life insurance policy as set forth above; Sam died on April 24, 2016; Sam's father opened his son's estate on July 25, 2016, and was appointed personal representative; Kindell made demand on the SFB
In support of its answer to Kindell's cross-motion for summary judgment, the Estate attached the affidavit of Josh Quinn, the SFB agent who sold Sam the life insurance policy at issue. He stated that John Odom introduced him to Sam and brought Sam to his office a few times. He also stated that after Sam and Kindell's divorce, Sam came to his office and asked him to help change the primary-beneficiary designation from Kindell to his father, Robert McKamie. He stated that Sam filled out the change-of-beneficiary form. Quinn failed to send the form to SFB's headquarters for processing. Quinn stated that he advised Sam that he could mention in his will that he intended to change the beneficiary on the policy. He stated, "I know for absolute fact that John Odom paid or caused to be paid many of the premium payments on the policy. I know for absolute fact that Sam only had one policy in effect as of the date he executed his last will[.]"
In Kindell's supplement to her cross-motion for summary judgment, she argues that the Estate never produced the change-of-beneficiary form referenced in Josh Quinn's affidavit. Attached to the supplemental pleading was an affidavit of SFB's custodian of records, Donna Kettleman, stating that a search of the company's policy file did not indicate the existence of any change-of-beneficiary form. Kindell argued that, based on Kettleman's affidavit, Josh Quinn's affidavit constituted inadmissible hearsay and should be disregarded.
*531 After a hearing on the parties' motions, the circuit court filed an order granting the Estate's motion for summary judgment, finding that Sam's last will and testament sufficiently identified the life insurance policy at issue and sufficiently identified his intent to change the beneficiary on the life insurance policy from Kindell to his father, Robert M. McKamie. Kindell's cross-motion was denied, and the clerk was directed to disburse the life insurance proceeds to the Estate. Kindell filed a motion for stay pending appeal along with her notice of appeal in a timely manner, and the circuit court granted the stay.
II. Applicable Law and Standard of Review
Arkansas Rule of Civil Procedure 56(c)(2) (2017) states that when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact then the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of sustaining a motion for summary judgment; once the moving party meets this burden, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. Ark. R. Civ. P. 56(e).
The law on summary judgments and appellate review of summary judgments is well settled. We view the evidence in the light most favorable to the opposing party and resolve all questions and ambiguities against the moving party. Edwards v. MSC Pipeline, LLC , 2013 Ark. App. 165, 2013 WL 840697. Summary judgments are used to determine whether there are any genuine issues of material fact that remain to be decided, and if not, whether one party is entitled to judgment as a matter of law. Id. Even when cross-motions for summary judgment are filed, if it is impossible to determine on appeal that either party is entitled to judgment as a matter of law, summary judgment should be reversed. Po-Boy Land Co., Inc. v. Mullins , 2011 Ark. App. 381, 384 S.W.3d 555.
It is generally held that, where a life insurance policy reserves to the insured the right to change the beneficiary but specifies the manner in which the change may be made, the change must be made in the manner and mode prescribed by the policy, and according to most courts any attempt to make such change by will is ineffectual. See generally Wanda Ellen Wakefield, Annotation, EFFECTIVENESS OF CHANGE OF NAMED BENEFICIARY OF LIFE OR ACCIDENT INSURANCE POLICY BY WILL , 25 A.L.R.4th 1164 (1992). However, Arkansas law is contrary to the general rule: Arkansas holds that a change of beneficiary can in fact be accomplished in a will so long as the language of the will is sufficient to identify the insurance policy involved and an intent to change the beneficiary. Pedron v. Olds , 193 Ark. 1026, 105 S.W.2d 70 (1937) ; see also Allen v. First National Bank , 261 Ark. 230, 547 S.W.2d 118 (1977).
The cardinal rule for the interpretation of wills and other testamentary documents is that the intent of the testator should be ascertained from the instrument itself and effect given to that intent. Nunnenman, supra. The purpose of construing a will is to arrive at the testator's intention; however, that intention is not that which existed in the testator's mind, but rather that which is expressed by the language of the instrument. Id. The paramount rule in construing wills is to determine the intent of the testator from the four corners of the will, considering the *532 whole will and in the light of the situation and circumstances surrounding the testator at the time the will is executed. Bailey v. Delta Tr. & Bank , 359 Ark. 424, 198 S.W.3d 506 (2004) ; Hanna v. Hanna , 273 Ark. 399, 619 S.W.2d 655 (1981).
With these principles in mind, we address Kindell's argument that Sam's will was not sufficient to change the beneficiary of his life insurance policy. She cites Nunnenman , supra , and contends that a change of beneficiary can only be accomplished in a will as long as the language of the will is sufficient to identify the insurance policy involved and an intent to change the beneficiary. Kindell admits that the intent to change the beneficiary was made clear in the will, but she claims that the will did not identify the policy because it specifically referenced a policy "purchased" by John Odom, and the policy at issue does not mention John Odom as a purchaser.
Kindell further claims that reliance on the will's provision referring to "any" insurance policy on Sam's life as payable to his father rather than to her disregards the rule that requires the testator to identify the policy, not just any policy. She relies on the rule contained in Webb v. Webb , 111 Ark. 54, 163 S.W. 1167 (1914), that general words may be restricted by particular words to less than their natural import when both are used in a will, and such restriction is justified by the context. Thus, Kindell argues that the will's specific reference to John Odom as the purchaser of the policy limits the more general reference to "any" or "all" policies on Sam's life.
Kindell also argues that this court should give meaning to every part of a will, not just isolated sentences from it. Piles v. Cline , 197 Ark. 857, 125 S.W.2d 129 (1939). She contends, therefore, that the question of whether John Odom purchased the policy is relevant because if Sam's intent was to amend all of his life insurance policies, there would have been no need for him to provide the specific identifying information of the policy "purchased by my brother, John Odom." She argues that the language of the policy makes it clear that John Odom did not purchase the policy; thus, she contends that the policy was not clearly identified in the will.
Kindell finally argues that the Estate improperly relied on extrinsic evidence to identify the policy referred to in the will. Extrinsic evidence may be received on the issue of the testator's intent only if the terms of the will are ambiguous. Harrison v. Harrison , 82 Ark. App. 521, 120 S.W.3d 144 (2003). Extrinsic evidence may be admitted only for the purpose of showing the meaning of the words selected by the testator and not to show what the testator meant. Id. Kindell argues that there are no *533 words in the will that need their meaning shown. She claims that there is no need to examine extrinsic evidence to determine what Sam meant when he referred to a policy purchased by John Odom.
When read in its entirety, Sam's will makes clear that he intended to change the beneficiary of any life insurance policy, and he intended to disinherit Kindell from any life insurance proceeds. This court must give meaning to every part of a will, Piles , supra , and relying on the entire provision in Sam's will that disinherits Kindell, we affirm the trial court's determination that the will properly identified the life insurance policy and Sam's intent. Even though both parties submitted proper attachments to their summary-judgment pleadings to establish whether the SFB policy was covered by the language of Sam's will, the circuit court did not need to look outside the four corners of Sam's will with his clearly stated intent to change the beneficiary of "any" life insurance policy to conclude that he intended to change the beneficiary of the SFB policy. Further, Kindell never disputes that Sam had only one life insurance policy, and she does not assert that Sam could have meant any other policy when he included this change-of-beneficiary provision in his will.
IV. Extrinsic Evidence to Identify the Policy
Kindell argues that if the Estate were allowed to introduce extrinsic evidence to demonstrate the intent of the testator to change the beneficiary or to identify the policy, the law that allows modification of a life insurance beneficiary through a will which sufficiently identifies the policy would be expanded, violating public policy. See Allen, supra. Under Allen , to change the beneficiary by a will, the insured must *534 sufficiently describe the policy and show an intent to effectuate a change of beneficiary for the policy. Sam's intent is not disputed. The only issue is whether Sam sufficiently described the policy. Because we hold that the will sufficiently identified the policy, we do not address Kindell's extrinsic-evidence argument.
Kindell argues that it was error for the circuit court to grant summary judgment because numerous factual issues remain with respect to the Estate's "extrinsic" evidence. She contends that even if John Odom had given Sam the money to pay the premiums as alleged, that fact would not make the policy one "purchased" by John Odom. She also argues that the affidavits relied on that allege these facts were contradicted by her own affidavit stating that John Odom gave her and Sam $8000 toward the purchase of a horse, the money was deposited into a joint bank account on January 17, 2012, and a $7000 check for a horse was written on January 20, 2012. Further, Kindell's affidavit alleged that she wrote the check for the initial premium on December 7, 2011, from her and Sam's joint bank account. She also points to her production of an affidavit from the SFB records custodian, Donna Kettleman, that stated no change-of-beneficiary form was found in the policy records. Thus, she claims that she sharply disputed the extrinsic evidence relied on by the Estate. She contends that reasonable minds could not differ in the conclusion that John Odom did not purchase or own the policy, and to the extent that an issue of fact remains on that question, summary judgment must be reversed.
We disagree. Setting aside whether John Odom purchased the SFB policy, Sam expressed a clear intent to change the beneficiary of any life insurance policy, including any that Kindell was named as beneficiary. This was stated three times in his will. Kindell does not dispute that Sam intended to leave her nothing. The supporting affidavits were properly considered and establish that "any policy purchased by my brother John Odom" must refer to the SFB policy. The affidavits allege that John Odom drove Sam to purchase the policy; John Odom deposited a check to pay for the initial premium and the second premium; John Odom did not purchase or participate in the purchase of any other life insurance policy on Sam; and Sam did not have any other life insurance policy at any time. Kindell's competing affidavit did not dispute that no other life insurance policy existed. Thus, no material question of fact remained, and the Estate was entitled to judgment as a matter of law. Accordingly, we do not address the Estate's argument related to Sam's substantial compliance with SFB's procedure to change the beneficiary of his life insurance policy. Nor do we address Kindell's arguments brought for the first time in her reply brief.
Affirmed.