Sharon Hays MARTINDALE *v.* The ESTATE of Sherman
MARTINDALE, *Deceased*; Citizen's Bank and Trust Company;
Cindy Ann Mizzell; Tammy Jo Flynn; and Robin Moore

CA 02-858                                          110 S.W.3d 319

Court of Appeals of Arkansas
Division III
Opinion delivered April 30, 2003

*Jones, Jackson & Moll, PLC,* by: *Mark Moll,* for appellant.

*Gean, Gean & Gean,* by: *Roy Gean III,* for appellees.

JOHN B. ROBBINS, Judge. Appellant Sharon Hays Martindale filed a petition to determine ownership of property following the death of her husband, Sherman Martindale, Jr. In her petition, Mrs. Martindale claimed entitlement to cattle and farm equipment acquired during their marriage. The appellees, Estate of Sherman Martindale, Jr., *et al.,* asserted that the assets at issue belonged to Mr. Martindale in his individual capacity at the time of his death and, consequently, are property of his estate. After a trial, the trial court ruled that Mr. Martindale was the sole owner of the cattle and equipment at the time of his death, and that it was the property of his estate. The trial court also ordered that Mrs. Martindale be reimbursed by the estate in the amount of $35,113.83 for expenses she incurred with respect to the cattle and equipment subsequent to Mr. Martindale's death.

For reversal of the trial court's order, Mrs. Martindale argues that the trial court erred in failing to find that the cattle and equipment were owned jointly instead of solely by Mr. Martindale. The appellees have cross-appealed, and argue that the trial court erred in ordering reimbursement of expenses incurred by Mrs. Martindale, and further request that a credit should be given against any amount of reimbursement for income received by Mrs. Martindale or for her use of the estate's farm equipment. We reverse on direct appeal, and we reverse on cross-appeal.

The evidence at trial established that Mrs. Martindale and Mr. Martindale were married in 1985, and that Mr. Martindale died on January 18, 2001. In 1990, the couple started a cattle business called S&S Limousin Farms, and a substantial amount of cattle and farm equipment remained at the time of Mr. Martindale's death. In his will, Mr. Martindale purported to give to his three daughters from a previous marriage, who are appellees herein, an interest in the cattle and farm equipment. Prior to the trial in this matter, Mrs. Martindale filed her election to take against the will.

Mrs. Martindale testified that she and Mr. Martindale farmed cattle and hay on real property that was owned by Mr. Martindale and also on property that they held jointly. She stated that throughout the farming operation the expenses were paid from a joint checking account. Initially, the account was styled, "Sherman or Sharon Martindale Limousin Farm Account," and it was subsequently styled, "Sherman or Sharon Martindale." Various checks were signed by either Mrs. Martindale or Mr. Martindale and were used for such things as purchasing cattle, buying or making payments for farm equipment, reparations, veterinarian bills, artificial insemination bills, feed, fuel, supplies, and membership dues to the North American Limousin Foundation.

Mrs. Martindale presented evidence that she and Mr. Martindale signed a promissory note in 1992 and borrowed $40,000.00 in order to acquire thirty-one head of Limousin cattle. The loan payments were made from their joint account. Loans were also taken for buying equipment such as a bailer, mower and rake that cost $19,000.00, a tractor that cost $27,000.00, and a soil aerator that cost $6750.00. Mrs. Martindale testified that all of the downpayments and monthly payments for these loans were made from their joint checking account.

Mrs. Martindale represented that she actively participated in the farming operation from its inception, and continued doing so after the death of her husband. She stated that she kept records and was involved in buying and selling cattle. Mrs. Martindale also maintained that she did everything from spreading chicken manure to bottle feeding calves to mowing hay, and that, "I did this every year, all the time." Mrs. Martindale testified that after Mr. Martindale died, she paid a total of more than $35,000.00 for

expenses such as equipment payments, reparations, supplies, farm labor, and insurance.

Mrs. Martindale introduced the insurance policy for the farm equipment, and the policy names both her and Mr. Martindale as the insureds. Also introduced into evidence was a financial statement bearing both of their names that listed as assets $35,000.00 in cattle and $35,000.00 in equipment.

Mrs. Martindale testified that the joint farm account was funded by a monthly payment of $7000.00 generated from a grocery store owned separately by Mr. Martindale. However, proceeds from the sale of cattle and hay were also deposited into the account. Mrs. Martindale stated that she never considered the money in the joint account to be only Mr. Martindale's, and that he never said anything to that effect. Mrs. Martindale stated, "I considered it our farm and not Sherman's farm," and that, "I never did consider the farm equipment to be Sherman's only."

Mr. Martindale's sister, Sue Shakingbush, was familiar with the farming operation and stated that the "S&S" in the name of the farm stands for "Sherman and Sharon." Mrs. Shakingbush further stated that both Sherman and Sharon Martindale owned the farm equipment.

Raymond Akins helped work on the farm, and he, too, stated that "S&S" stands for "Sherman and Sharon." Mr. Akins testified that both before and after Mr. Martindale's death, Mrs. Martindale has continuously worked on the farm performing such work as feeding cattle and driving a tractor or bulldozer. Mr. Akins thought that both of them owned the cattle and equipment.

Mrs. Martindale argues on appeal that the trial court clearly erred in finding that the cattle and farm equipment were owned solely by Mr. Martindale. She maintains that the farm was at all times operated jointly by her and Mr. Martindale, as evidenced by the fact that every expense was paid from their joint bank account. Mrs. Martindale also notes that she was authorized to conduct business on behalf of the farm, signed a promissory note to purchase cattle, was named on a financing statement that listed the cattle and equipment, and was named as an insured. Considering the indicia of ownership presented at the trial, Mrs. Martindale

contends that she proved she was a joint owner of the cattle and farm equipment.

In response to Mrs. Martindale's argument, the appellees raise several points that they contend demonstrate a lack of joint ownership. The appellees point out that registration certificates issued by the North America Limousin Foundation reflect that the cattle were registered in Mr. Martindale's name only. The appellees also note that the probate inventory prepared by the personal representative of the estate identifies the cattle and farm equipment as part of the estate, and that the personal representative met with Mrs. Martindale before preparing the inventory. Moreover, the appellees argue that Mr. Martindale's intention to keep the property in his individual capacity is evidenced by the fact that he treated it as such when preparing his will. The appellees further direct us to security agreements for farm equipment signed only by Mr. Martindale, and personal property tax assessments that include the equipment and are signed only by him. Finally, the appellees contend that the trial court was justified in relying on the fact that the joint account was being funded by Mr. Martindale's separate assets.

■ A party can destroy the nonmarital status of property by placing it in an account held jointly with a spouse. *McKay v. McKay*, 66 Ark. App. 268, 989 S.W.2d 560 (1999). A presumption arises that a spouse placing money in a joint account intended to make a gift of an interest in this money to the other spouse. *Id.* Once property, whether personal or real, is placed in the names of persons who are husband and wife, without specifying the manner in which they take, there is a presumption that they own the property as tenants by the entirety, and it takes clear and convincing evidence to overcome that presumption. *Lofton v. Lofton*, 23 Ark. App. 203, 745 S.W.2d 635 (1988). Furthermore, once property is owned by a husband and wife as tenants by the entirety, it retains its character of being entirety property even though the form of the asset may change. *See, e.g., Mathis v. Mathis*, 52 Ark. App. 155, 916 S.W.2d 131 (1996).

■ In bench trials, the standard of review on appeal is not whether there is any substantial evidence to support the finding of the trial court, but whether the trial court's findings were clearly erroneous. *Schueck v. Burris*, 330 Ark. 780, 957 S.W.2d 702

(1997). We hold that the trial court clearly erred in finding that Mrs. Martindale was not a joint owner, or more accurately, a co-owner as a tenant by the entirety, of the property at issue where there was no clear and convincing evidence to rebut the presumption that the joint bank accounts were held by the entirety, and all of the property was purchased from these accounts.

While the appellees correctly assert that the registration certificates for the cattle reflect Mr. Martindale's name, the membership application lists Mrs. Martindale as a person authorized to do business and bears her signature. Moreover, Mrs. Martindale signed a promissory note to purchase cattle, and bought and sold cattle throughout the farming operation. The fact that the certificates only reflect Mr. Martindale's name is not alone determinative of ownership. This fact was established by the testimony of the Martindale's veterinarian, who stated that he has been a partner in a cattle-farming operation where all the cattle were registered in his partner's name.

While it is true that Mr. Martindale's will treats the property as nonmarital and it is listed in the inventory of the estate, Mrs. Martindale correctly asserts that there was other, jointly-owned property that Mr. Martindale attempted to dispose of in his will. The property tax assessments referenced by the appellees are in Mr. Martindale's name, but also list Mrs. Martindale as his spouse. While the appellees correctly note that security agreements and bills of sale for farm equipment contain only Mr. Martindale's name, this alone does not end the inquiry in light of the other evidence. It is not disputed that the equipment was purchased with funds from the Martindales' joint bank account.

■ Mrs. Martindale testified that Mr. Martindale had a separate bank account from the time they were married until he closed it in 1993, and yet no contributions to the farm were made from this account. Instead, Mr. Martindale elected to open a joint account bearing both of their names and all farm expenses were paid from that account. The fact that the account was generated in part by Mr. Martindale's separate assets does not render the joint account, or purchases made from that account, his sole property in the absence of clear and convincing evidence of separate ownership. From our review of the record, we cannot find the clear and convincing evidence necessary to support the trial

court's ruling that the cattle and equipment were solely owned by Mr. Martindale, and now by his estate.

■ We now turn to the appellees' cross-appeal. The appellees argue that the trial court erred in ordering the estate to reimburse Mrs. Martindale for $35,113.83 that she allegedly spent in operating the farm after Mr. Martindale's death. Mrs. Martindale agrees that if we reverse on direct appeal, we should reverse on cross-appeal as no reimbursement will be necessary if she owns the cattle and farm equipment. Because we reverse on direct appeal, we also reverse on cross-appeal.

Reversed on direct appeal and on cross-appeal.

STROUD, C.J., and CRABTREE, J., agree.