2013 Ark. App. 290

**In the Matter of the ESTATE OF Lewis Weldon ADAIR, Deceased, Appellant**

v.

**Audria J. ADAIR, Appellee.**

**No. CA 12–983.**

Court of Appeals of Arkansas.

May 1, 2013.

Wilson, Walker & Short, Hope, by: Charles M. Walker, for appellant.

Brasel Law Firm, PLLC, by: Aaron R. Brasel, for appellee.

DAVID M. GLOVER, Judge.

This is a dispute between an estate and the widow of the deceased as to who owns certain farm equipment. The trial court determined that the farm equipment in question belonged to the widow, appellee Audria Adair. The estate appeals that determination. We affirm the trial court's decision.

*Factual Background*

Lewis and Audria Adair were married in February 1993; it was a second marriage for both parties. Prior to their marriage, Lewis purchased 200 acres of real property in Hempstead County with funds from the sale of his separate real property located in Texas; after Lewis and Audria married, Lewis added Audria's name on his Hempstead County property.[1] In 2009, Lewis and Audria sold 150 acres of the 200 acres

---

1. Additionally, Audria and Lewis together farmed 150 acres that Audria inherited prior to her marriage that always remained solely in her name and is not at issue in this appeal.

held as tenancy by the entirely for $160,000, keeping the remaining fifty acres and farming that property together. Lewis and Audria purchased two $50,000 CDs with the funds from the sale of the 150 acres, and the remainder of the money was placed in what was known as "the farm account." Although the farm account was originally only in Lewis's name, Audria's name was added to the account in 1995.

In July 2010, Lewis executed a will. Soon after Lewis's death on May 10, 2011, his son, Charles Thomas Adair, filed a petition to probate Lewis's will and to appoint himself as executor of Lewis's estate as provided by Lewis's will. An order admitting the will to probate and appointing Charles Thomas Adair executor was filed on June 9, 2011. Lewis's will provided that he had previously given Audria cash as well as real properly that he owned prior to their marriage and had placed in her name, and it stated that he considered that to be adequate. He specifically bequeathed to his son, Charles Thomas Adair, his 4235 Massey Ferguson tractor and fifteen-foot batwing bushhog; to one stepson, Scott Hatfield, his stud horse; and to his other stepson, Alan Moses, a sack of "horse apples." The rest of his estate was to be divided between his son and his daughter, Paulette Adair Phillips. On July 26, 2011, Charles Thomas Adair filed an inventory of the estate, claiming farm equipment, a Kubota Mule, trailers, a four-wheeler, guns, knives, and horses as property of the estate. Thereafter, on November 4, 2011, Audria, as Lewis's widow, filed her election to take against the will her dower interest; she also filed a petition for statutory allowances, claiming that she was entitled to all of the items in the house, on the real property, and in the

barn, including all of the farm equipment (including the Kubota Mule, trailers, and two four-wheelers), guns, knives, and horses. Audria also filed a petition contesting the estate's inventory and claiming certain personal property to be her sole property or, alternatively, certain personal property to be one-half owned by her.

### The Probate Order

On May 2, 2012, a hearing was held on Audria's petition. At the close of the hearing, the trial court made the following findings: that the New Holland rake, single-axle trailer, field cultivator, two-row planter, one four-wheeler, post-hole digger, nine guns, and three knives were properly of the estate; and that the following items of personal property passed to Audria, as they were "purchased during the marriage with marital assets, either from marital income and from a marital account and/or from the proceeds of the sale of marital real property that was then placed into a marital account making said purchases of said personal property therefrom, thereby making said personal property subject to tenancy by the entirety":

all items located in the home, on the property, and in the barn; 4WD Massey Ferguson tractor; fifteen-foot bushhog; 2WD Massey Ferguson tractor; New Holland round hay baler; John Deere square hay baler; hay rake; hay cutter; seven-foot bushhog; goose-neck trailer; twenty-foot trailer; Kubota Mule; tractor-mount tiller; Ford tractor; five-foot bushhog; four-wheeler; trailer-mounted spray rig; tractor-mounted seeder; post-hole digger; two guns; fertilizer spreader; hay fluffer; stock trailer; and horses.[2]

2. After the trial court's ruling regarding the personal property, Audria formally withdrew her "Election to Take Against the Will and Election for Statutory Allowances," which the trial court allowed her to do.

This order was filed on June 4, 2012; the estate filed a timely appeal on June 26, 2012.

## Standard of Review

■■■ Probate cases are reviewed de novo on the record; however, the decision of the probate court will not be reversed unless clearly erroneous. *Ellis v. Ellis,* 315 Ark. 475, 868 S.W.2d 83 (1994). A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left, on the entire evidence, with the firm conviction that a mistake has been committed. *Minton v. Minton,* 2010 Ark. App. 310, 374 S.W.3d 818. Our appellate courts defer to the trial court's evaluation of witness credibility. *Id.*

## Discussion

On appeal, the estate only contests Audria's receipt of farm equipment purchased in two transactions as her separate property—(1) one transaction on November 20, 2007, in which a used Massey Ferguson 2WD tractor with a loader and other attachments and a new Bush Hog cutter were purchased for a total of $37,400; and (2) a second transaction on March 10, 2009, in which a used Massey Ferguson 4WD tractor with a loader and other farm implements, a used John Deere square baler, and a new Massey Ferguson disc mower were purchased for a total of $40,400.[3] It was undisputed that in the 2007 transaction that $16,400 of Lewis's premarital farm equipment was traded in on the newer equipment, and the balance of $21,000 was paid with marital funds. It was undisputed that, in the 2009 transaction, $12,400 of Lewis's premarital farm equipment was traded in on the newer equipment, and the balance of $28,000 was paid with marital funds. The estate contends that the trial court erred in denying it any interest in the newer farm equipment purchased in those two transactions. Specifically, the estate argues that it owns 100% of the equipment purchased in those transactions; alternatively, it argues that it has a 37% interest in the equipment purchased in those two transactions.

■■ In support of its argument, the estate asserts that there was no dispute that non-tenancy-by-the-entirety property constituted 37% of the purchase price of the newer farm equipment. However, the estate never argued to the trial court an entitlement to a percentage interest in the newer farm equipment. This "percentage" argument is being made for the first time on appeal and is not preserved for appellate review. *See Davis v. Davis,* 2013 Ark. App. 180, 2013 WL 1007249 (holding that this court will not consider an argument raised for the first time on appeal but is bound by the scope and nature of the arguments made at trial). Even if the issue had been preserved, the cases cited by the estate are divorce cases, and our supreme court held in *Cloud v. Brandt,* 370 Ark. 323, 259 S.W.3d 439 (2007), that the law regarding marital property does not apply in situations other than divorce, including the settlement of estates.

■■ The estate next argues that it had successfully rebutted the presumption that the equipment belonged to Audria because the equipment was held as tenants by the entirety. The estate contends that, when the money was withdrawn from the joint farm account to purchase the newer farm equipment at issue, the tenancy by the entirety was destroyed, as evidenced by the bills of sale, because the newer farm

---

**3.** The bushhog and one of the Massey Ferguson tractors that Lewis attempted to bequeath to his son are items of farm equipment awarded to Audria and are the subject of the estate's appeal. Both tractors were Model 4235 tractors.

equipment was placed only in Lewis's name. The estate further contends that all the farm income was reported in Lewis's name on the tax returns as a sole proprietorship, which therefore indicates that the farming operation was his alone, instead of a partnership between Lewis and Audria. We cannot agree with the estate's contentions given the facts of this case.

Arkansas recognizes that an estate by the entirety can exist in personalty. *Morris v. Cullipher,* 306 Ark. 646, 816 S.W.2d 878 (1991); *Bostic v. Bostic Estate,* 281 Ark. 167, 662 S.W.2d 815 (1984). The estate's argument—that the bills of sale were only in Lewis's name and that the farm income was reported as a sole proprietorship on the tax returns both require a finding that the presumption that the farm equipment was owned as tenants by the entirety was rebutted—ignores other evidence presented at trial. The fact that the bills of sale for the farm equipment are in only one spouse's name (here, the husband's) does not end the inquiry in light of other evidence. *Martindale v. Estate of Martindale,* 82 Ark.App. 22, 110 S.W.3d 319 (2003).

|7There was testimony from Audria that during the marriage, she worked on both farms (hers and theirs) with Lewis; that they did not separate the income from her farm versus the marital farm but that they placed the proceeds from both farms into the farm account for farm expenses and the purchase of equipment; that the farm operation was a joint venture; that she and Lewis filed taxes jointly as husband and wife, and the depreciation on the tax returns for the farm equipment was taken jointly against her income, too; and that they never assessed any personal properly separately from one another during the marriage. With regard to the 2009 purchase of equipment, Audria testified that

she and Lewis purchased the equipment together; that she signed her name on the bill for the equipment because Lewis told her to do so; and that she wrote a $28,000 check out of the farm account for the balance owed on the equipment. With regard to the 2007 purchase of equipment, Audria testified that she and Lewis discussed the purchase of the equipment prior to buying it; that she went with Lewis to make the purchase; that they were both purchasing the equipment; that she signed Lewis's name on the invoice because he was too weak to sign it; and that she wrote a check for $7,000 and paid $14,000 cash from marital funds that had not been placed into the farm account. Audria said that there was never any discussion during either purchase that the equipment belonged only to him.

James Southall, the farm-equipment dealer from whom the disputed newer farm equipment was purchased, testified that both Lewis and Audria would purchase farm |8equipment, always making purchase decisions together. He testified that it was his opinion that Lewis and Audria bought the disputed farm equipment together; that Audria signed the 2009 invoice, not Lewis; and that Audria wrote the checks. Southall explained that while the invoices for the farm equipment were both made out only in Lewis's name, that unless there was a request to put both names on the invoice, typically he would put the male's name on the invoice; however, Southall said that he never remembered Lewis requesting that his name only be placed on the invoices.

With regard to the tax returns, Becky Walker, Lewis and Audria's accountant, testified that she had prepared their taxes from 1996 until the present, and that they always filed jointly. Walker explained that the farm was listed in Lewis's name because Lewis and Audria were not in a

formal partnership, which was very customary for a husband and wife; she said that Lewis and Audria could have split the farm income, but that again it was not customary to do so, so it was all reported in Lewis's name. However, she said that the depreciation on the farm equipment was taken in both of their names, although it was listed on Schedule F of the farm page only in Lewis's name. She said that the equipment was depreciated against the farm income and the rest of their marital income, and that she was never instructed by either Lewis or Audria to separate out the income between them.

While the facts of *Martindale, supra,* are different than the facts of the instant case, we find that case instructive. There, Sherman and Sharon Martindale were married in 1985, and began a cattle business in 1990. When Sherman died in January 2001, a substantial amount of cattle and farm equipment remained. In his will, Sherman purported to give his three daughters from a previous marriage an interest in the cattle and the farm equipment; Sharon claimed that the property was hers as tenancy by the entirety. Sharon presented evidence that the farming expenses were paid from a joint checking account; that she and Sherman executed a promissory note and borrowed money to purchase cattle and farm equipment, with the down payments and the monthly payments being drawn from their joint checking account; and that while money from Sherman's separate property as well as proceeds from the sale of cattle and hay were all deposited in the joint account, she never considered any money in the joint account to be just Sherman's. The trial court found that the cattle and the farm equipment were owned solely by Sherman; this court reversed that decision, holding that a party can destroy the nonmarital status of property by placing it in an account held jointly with a spouse, with a presumption arising that a spouse placing money in a joint account intended to make a gift of an interest in that money to the other spouse. This court further held that the fact that the cattle certificates and the security agreements and bills of sale for the farm equipment were only in Sherman's name did not end the inquiry in light of other evidence, and the fact that the joint account was generated, in part, by Sherman's separate assets did not render the joint account, or purchases made from the joint account, Sherman's sole property in the absence of clear and convincing evidence of separate ownership.

In our case, we recognize that we are not dealing with a *Martindale* titled checking account that had money placed in it from a separate source; rather, we are dealing with farm equipment Lewis owned prior to marrying Audria that was never reduced to money and placed into an account but instead was a direct trade-in to the farm-implement company as credit on newer farm equipment purchased by Lewis and Audria together, with the balance of the newer farm equipment being purchased using marital funds. However, the outcome in the present case is the same as in *Martindale, supra*—that a party can destroy the nonmarital status of property by taking certain actions. Here, Lewis took his premarital farm equipment that was being used by him and Audria in their joint farming operation since 1993, and that equipment was traded in on newer and different farming equipment that was thereafter used in his and Audria's farming operation. Lewis knowingly took his separate property and commingled it with marital property to purchase the newer farm equipment in question both in 2007 and in 2009, thereby destroying the nonmarital status of his separate property. We cannot say that the trial court's finding that the farm equipment was Audria's sep-

arate property by virtue of tenancy by the entirely is clearly erroneous.

Affirmed.

WALMSLEY and WHITEAKER, JJ., agree.