# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-684

|  |  |
|---|---|
| LAURIE D. FARROW | Opinion Delivered March 8, 2017 |
| APPELLANT | APPEAL FROM THE CARROLL COUNTY CIRCUIT COURT, WESTERN DISTRICT |
| V. | [NO. 08PR-15-13] |
| SHEILA FULLER, AS ADMINISTRATRIX OF THE ESTATE OF RICHARD BLOCH, DECEASED, AND AUTUMN BREEZE RESTAURANT, INC. | HONORABLE SCOTT JACKSON, JUDGE |
| APPELLEES | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## N. MARK KLAPPENBACH, Judge

Appellant Laurie D. Farrow filed a petition in probate court to have certain real property removed from the estate of Richard Bloch, deceased, her former partner. Farrow alleged that these two properties passed to her as a joint tenant with rights of survivorship upon Bloch's death. The trial court granted Farrow's request as to one piece of property but converted her ownership interest in the other property to a tenant in common with the estate. Farrow now appeals, and we affirm in part and reverse and remand in part.

Farrow and Bloch were romantic partners for thirty-five years, and while they had a child together, they never married. Their relationship ended in 2012, and litigation was initiated regarding the operation of a restaurant the parties owned, Autumn Breeze, and the division of assets. The litigation resulted in a settlement agreement. Bloch married Sheila Fuller on January 1, 2015, and on March 6, 2015, Bloch died intestate. Fuller was appointed

as the personal representative of his estate. Farrow filed a petition to have the restaurant property and a house removed from the estate. She argued that the two properties were jointly purchased by her and Bloch with the deeds naming them "joint tenants with the right of survivorship." Farrow claimed that the settlement agreement did not change the ownership of the properties, and thus, they passed to her at Bloch's death.

The settlement agreement, signed by Farrow and Bloch on April 18, 2013, stated that they remained joint owners of the house and restaurant property. They agreed that Bloch would be entitled to sole possession of the house. Bloch was to pay Farrow $30,000 as consideration for Farrow's shares in the restaurant corporation, Autumn Breeze, Inc., and Farrow agreed to vacate the house fifty-six days after receipt of this payment. Bloch was to make the mortgage payments on the house, and the parties were to continue to list the house for sale. Farrow was entitled to one-half of the net profits only if the house sold for an amount greater than $400,000. The agreement provided that Bloch would make yearly attempts to refinance the mortgage in his sole name beginning in May 2014. If Bloch was successful in refinancing the mortgage, Farrow would release her interest in the property via a quitclaim deed and would not be entitled to any profits of a sale.

Regarding the restaurant property, the settlement agreement provided that Bloch would have sole and exclusive use of the real estate in exchange for the payment of one dollar per year as rent. The agreement stated that on or before May 1, 2023, Bloch would list the property for sale for the sum of not less than $335,000. Upon the sale of the property, all profits after costs of the sale were to be equally divided between the parties.

Among other things, the settlement agreement also divided personal property and set out the parties' obligations to pay the utilities and keep the properties insured.

At a final hearing, Farrow testified that the parties intentionally chose to not change the ownership of the properties from joint tenants with right of survivorship to a tenancy in common; instead, they left it the way it was to protect themselves until the properties sold. She said that both she and Bloch were represented by attorneys when they negotiated and entered into the settlement agreement. Since that time, the properties had not been sold, and the mortgage had not been refinanced. Farrow thought that the mortgage balance was around $320,000 at the time of the settlement agreement. Fuller argued that the estate should be entitled to Bloch's rights under the settlement agreement because it stated that it "shall inure to the benefits of, and shall be binding upon, the heirs, legal representatives, successors and permitted assigns of the parties hereto." Fuller also claimed that the estate was insolvent without the properties and that the equities of the case and the changed circumstances of the parties supported the imposition of a constructive trust in favor of the estate.

The trial court found that the settlement agreement stated the parties' intentions with respect to dissolution but was only partially performed, and no documents modifying property ownership or responsibility had been executed. With respect to the house, the trial court found that "based upon the mortgage indebtedness and the estate's inability to assume any responsibility for the mortgage, it is not possible to attempt to carry out the terms of the Settlement Agreement and the petitioner's petition to remove the real property from the

SLIP OPINION

estate should be granted." With respect to the restaurant property, the court found that "the property is not mortgaged and the intent of the Settlement Agreement was clear that Farrow and Bloch [would] share an equal interest in the division of this parcel, therefore the petitioner's petition to remove the real property is denied. To carry out the intent of this order, the ownership interest in the warranty deed to the . . . property shall be converted to a tenancy in common." Farrow appeals from this order. The estate has not filed a brief on appeal.

Probate cases are reviewed de novo on the record; however, the decision of the probate court will not be reversed unless clearly erroneous. *Estate of Adair v. Adair*, 2013 Ark. App. 290, 427 S.W.3d 733. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left, on the entire evidence, with the firm conviction that a mistake has been committed. *Id.* Our appellate courts defer to the trial court's evaluation of witness credibility. *Id.*

Farrow argues that the trial court erred in converting a joint tenancy to a tenancy in common and in disposing of two identically titled properties in different ways when title to both properties passed to her as the surviving joint tenant. We agree. A joint tenancy with right of survivorship may be created in real property by conveyance to two or more persons, regardless of their relationship to each other. Ark. Code Ann. § 18-12-106(a) (Repl. 2015); *Brissett v. Sykes*, 313 Ark. 515, 855 S.W.2d 330 (1993). Both deeds at issue here conveyed the properties to Bloch and Farrow "as joint tenants with right of survivorship." When a joint tenant dies and is survived by other joint tenants, title to the real estate passes by

SLIP OPINION

operation of law to the survivor or survivors. *See Gladson v. Gladson*, 304 Ark. 156, 800 S.W.2d 709 (1990). Title to property held in joint tenancy takes precedence over the claim of a devisee, legatee, or heir. *Id*. An heir is not entitled to inherit interests terminated by the intestate's death. *See* Ark. Code Ann. § 28-9-206(a) (Repl. 2012). In *Tripp v. C.L. Miller*, 82 Ark. App. 236, 105 S.W.3d 804 (2003), we held that it was error to reform a deed to reflect that the appellant and decedent owned property as tenants in common where the deed unambiguously created a joint tenancy with right of survivorship.

Farrow contends that the settlement agreement did not convert ownership of the properties to a tenancy in common. She argues that the plain language of the agreement did nothing to convert or terminate the joint tenancy with right of survivorship but instead anticipated the joint tenancy remaining in place until the properties were refinanced or sold. Farrow contends that the terms of the agreement and the fact that no new deeds had been executed, despite the fact that both parties were represented by attorneys, strongly indicates that no change in ownership was intended until later. We agree.

The supreme court has held that the issue of whether a settlement agreement changes a tenancy by the entirety into a tenancy in common turns on the construction of the language in the settlement agreement. *Killgo v. James*, 236 Ark. 537, 367 S.W.2d 228 (1963). Like a joint tenancy with right of survivorship, an estate by the entirety, which is peculiar to marriage, entails the right of survivorship. *See Lowe v. Morrison*, 289 Ark. 459, 711 S.W.2d 833 (1986). The property settlement agreement in *Killgo* provided that upon the parties' divorce, the husband would have possession of the parties' home "until such time as the

5

parties to this case may agree on a sales price." 236 Ark. at 538, 367 S.W.2d at 229. The proceeds of a sale were first to be used to reimburse the husband for mortgage payments and then to be equally divided. When the husband died before the property was sold, his heirs brought a suit for partition on the theory that the settlement agreement converted the tenancy by the entirety into a tenancy in common. The supreme court, however, held that there was nothing in the agreement to support the conclusion that the parties had an affirmative intention to bring about an immediate termination of the tenancy by the entirety. The court further stated that

> [f]or a couple to declare that they will sell a piece of property at some future date and divide the proceeds is not even a roundabout way of saying that they will also become tenants in common at once. The language that the Killgos selected, with the advice of counsel, is perfectly consistent with a desire on their part to leave the estate untouched until a sale should be completed. We do not feel justified in rewriting the contract by reading into it an additional clause that the parties chose to leave out.

*Killgo*, 236 Ark. at 539–40, 367 S.W.2d at 230.

In a later case, *Rucks v. Taylor*, 282 Ark. 200, 667 S.W.2d 365 (1984), the supreme court affirmed the conversion of a tenancy by the entirety into a tenancy in common upon holding that the language in the settlement agreement showed an intent to terminate all property rights between the parties with the signing of the agreement. This agreement included the statement that it was the "intention of the parties that all rights, interest, liabilities, and relations, with respect to property and financial matters be finally and conclusively fixed and determined by this agreement in order to settle and determine in all respects and for all purposes their respective present and future property rights, claims and

demands in such a manner that any action with respect to the rights and obligations, past, present, or future, of either party, with respect to the other, be finally and conclusively settled and determined by this agreement." *Rucks*, 282 Ark. at 202, 667 S.W.2d at 366.

The language in the agreement between Bloch and Farrow is much more similar to the language in *Killgo* than in *Rucks*. As in *Killgo*, Bloch and Farrow, who were represented by counsel, agreed to sell their property at some point in the future. Their agreement did not state an intent to dispose of all property rights upon execution of the agreement, and they did not execute deeds to reflect a change in their ownership. Therefore, we hold that it was clearly erroneous for the trial court to convert Farrow's interest into a tenancy in common. While the trial court attempted to fulfill the intent of the agreement that Bloch and Farrow receive equal interests in the restaurant, performance of the settlement agreement with regard to the properties had become impossible. *See Butcher v. Beatty*, 2010 Ark. 130 (specific performance of an agreement for wife to pay sum of money in exchange for full title to property was impossible when husband died and title vested solely in wife). Title to both properties vested solely in Farrow upon Bloch's death, and the estate has no interest in the properties.

The trial court's decision to remove the house from the estate based on the mortgage indebtedness reached the right result for the wrong reason. The court's refusal to remove the restaurant from the estate was clearly erroneous. Accordingly, we affirm in part and reverse and remand in part.

Affirmed in part; reversed and remanded in part.

GRUBER, C.J., and GLOVER, J., agree.

*Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *Sarah L. Waddoups*, for appellant.

No response.