ROBERT J. GLADWIN, Judge
Ricky Lee Craig, father of decedent Zerottie Lemans Craig, appeals the Garland County Circuit Court's July 21, 2017 order wherein the court admitted the decedent's October 18, 2003 last will and testament ("LWT") to probate and appointed appellant and Thomasena McNutt, the decedent's sister, as coexecutors of the estate. The court also found that the decedent's antenuptial agreement ("AA") removed his wife from the LWT but did not revoke the LWT or remove the residuary bequest to the decedent's stepchildren. On appeal, appellant argues that the circuit court abused its discretion by (1) declaring effective a residuary bequest when the condition precedent had not occurred, and (2) declaring the LWT effective when the later AA canceled it. We reverse and remand in part and affirm in part.
I. Facts
The decedent married Cheryl Craig on March 17, 2001. On October 18, 2003, the decedent executed his LWT, which provides in part:
5.1 Spouse Surviving: In the event my spouse survives me by 30 days, I give all of my property, whether real, personal or mixed, to my spouse.
5.2 Spouse Predeceased: In the event my spouse fails to survive me by 30 days, I give the residue of my estate in equal shares to Jasen Evan Lee McDaniel and Jacob LaRay DeWayne Crawford, my stepchildren/descendants, per stirpes.
The decedent and Cheryl divorced on January 3, 2011. However, on May 10, the *562 decedent and Cheryl entered into an AA, which provides in part:
WHEREAS, both parties desire to define the interests which each other shall have in the respective estate of the other during marriage or after marriage, in the event of divorce between the parties, and after the death of one of the parties herein; and
WHEREAS, it is the desire and intention of the parties that their respective personal and real property and financial affairs and matters be finalized as between the parties herein, such that this Agreement shall settle and determine in all respects, each party's respective interest in and to the other party's past, present and future property rights, claims, demands and actions, obligations, debts, and any other matters relating to each respective party hereto, such that this document is conclusive and final and legally binding upon the parties hereto, and their respective heirs at law; and
WHEREAS, it is the specific intention of the parties herein that they shall, when and if they marry, continue in the marriage relation but in the event of death or legal separation of the parties hereto, that this document shall conclusively settle and be legally binding upon the parties hereto, that this document shall conclusively settle and be legally binding upon the parties herein, such that the property rights in such legal separation or divorce are decided as specified hereinafter, and determine by the terms specified herein; and
WHEREAS, both parties herein desire and agree to accept all of the provisions herein in lieu of all rights which he or she might otherwise acquire or be entitled to or inherit from the other, by virtue of separation, divorce or death; and
....
I.
First Party [decedent] now owns real property, securities, personal effects, automobiles and other personal property and property of a mixed nature which has been disclosed to Second Party [Cheryl] herein.... Any such property so acquired, as well as that property previously acquired prior to marriage and disclosed herein ... shall constitute the sole and exclusive property of First Party, and Second Party, by her signature herein on this Agreement hereby relinquishes all right, title and interest that she might now have or hereinafter have or acquire by law in said property of First Party. Second Party hereby released all rights in the property or estate of the First Party which she might have by reason of their marriage, whether by dower, statutory allowance, intestate share, election to take against his Will, or any other means by which she might acquire an interest, at law or equity, and under the laws of any jurisdiction which might be applicable to said property. Further it is the specific intention of Second Party that such release shall specifically allow First Party to provide that all such property owned by him shall, in the event of his death, pass to the named devisees or legal beneficiaries of First Party, or according to the terms of his Will or other legal instruments in effect at his death, and that in the event of divorce or legal separation or death, said property shall be the sole and separate property of First Party, whether he dies with or without a Will.
....
VII.
Both parties acknowledge to the other, by the signing of this Agreement, that in the event of the termination of the marriage relationship of the parties, by death, by legal proceedings or otherwise, *563 that they will make absolutely no claim nor receive any interest in any part of the property, income or estate of the other party which was acquired before and/or during their marriage, or which arose out of all rights to that claim by reason of the marriage relationship, or other matters between the parties, other than as specified above. It is specifically understood that neither party shall take anything from the other's estate, and neither party has made, nor contemplates, any provision of the other in their respective Last Wills and Testaments.
The decedent and Cheryl remarried on May 14, 2011, and the decedent died on April 10, 2017, while they were still married.
On April 27, 2017, McNutt, the decedent's sister, filed a petition to open the decedent's estate and appoint herself as administrator. In the petition, McNutt alleged that Cheryl was statutorily prevented from serving as executrix of the estate. The applicable statute provides:
If, after making a will, the testator is divorced or the marriage of the testator is annulled, all provisions in the will in favor of the testator's spouse so divorced are revoked. With these exceptions, no will or any part thereof shall be revoked by any change in the circumstances, condition, or marital status of the testator, subject, however, to the provisions of § 28-39-401 [providing for a surviving spouse's election against a will].
Ark. Code Ann. § 28-25-109(b) (Repl. 2012).
On May 4, Cheryl filed a petition to probate the decedent's LWT and to be appointed personal representative, alleging that she was the decedent's wife and sole heir. On May 9, Cheryl filed an amended petition alleging that she, her two sons, Jasen McDaniel and Jacob Crawford-the decedent's stepsons-and the decedent's mother and father, Betty and appellant Ricky Craig, were the decedent's surviving heirs. Cheryl's sons each filed a consent for Cheryl to serve as executrix of the decedent's LWT. McNutt and appellant filed an amended and supplemented petition to open estate and appoint coadministrators, asking that they both be appointed coexecutors of the estate.
A hearing on the competing petitions was held on June 5. At the hearing, Cheryl for the first time provided the AA to appellant and McNutt. Appellant and McNutt moved to amend their petition, requesting that they be appointed coadministrators but asking that the LWT be held invalid pursuant to the AA and Ark. Code Ann. § 28-25-109(b). They claimed that the statute revoked the provisions to the surviving spouse in the LWT. Further, they argued that the AA revoked the LWT in its entirety. Thus, appellant and McNutt asked to be appointed coadministrators of the estate and that the decedent be declared to have died intestate. Cheryl agreed that the AA terminated her claim to the decedent's estate but argued that it did not affect the claim of her two children. She argued that the LWT was not fully revoked by the AA. The circuit court gave the parties twenty days to submit briefs on the issue.
In Cheryl's brief, she alleged that she was not seeking a claim against the estate and that she was acting on behalf of her sons. She argued that McGuire v. McGuire , 275 Ark. 432, 631 S.W.2d 12 (1982), is parallel to the instant case. The decedent in McGuire bequeathed property to his wife and named his stepchildren as the residual beneficiaries. When the decedent divorced his wife, the question became whether the stepchildren remained the residual legatees. Id. at 433, 631 S.W.2d at 13. Our supreme court held that *564 the bequest to the former spouse was revoked in accordance with the statute, and the stepchildren were the proper parties to receive the property under the terms of the will. Id. at 434-35, 631 S.W.2d at 14.
Appellant and McNutt alleged that Cheryl had no standing to seek probate of the LWT or to be appointed administrator or executor because the AA precluded her from doing so. Under their agreement, Cheryl cannot have any interest in the decedent's property, and she is a stranger to the estate. Further, pursuant to Ark. Code Ann. § 28-25-109(b), all the provisions in favor of Cheryl were revoked when she divorced the decedent.
The circuit court issued a letter opinion on July 5 denying and dismissing Cheryl's petitions and appointing McNutt and appellant as coexecutors of the estate. The court's letter states in part:
Other than the revocation of the provisions in favor of Cheryl Craig, A.C.A. section 28-25-109(b) states no will or any part thereof shall be revoked by any change in the circumstances, condition, or marital status of the testator. A.C.A. section 28-25-109 [ (c) ] states when there has been a partial revocation, reattestation of the remainder of the will shall not be required.
Petitioners Thomasena Craig McNutt and Ricky Lee Craig argue the decedent's LW & T should be voided in its entirety because of decedent's subsequent AA. However, the court finds while it is logical to think decedent would have revoked and or amended his 2003 LW & T upon the execution of the AA, the AA agreement is not inconsistent with decedent's LW & T. The AA clearly removes Cheryl Craig from decedent's estate and LW & T but does not unequivocally revoke the LW & T or remove the residuary request [sic] to decedent's stepchildren.
On July 21, the circuit court issued its formal order dismissing Cheryl's petitions and appointing McNutt and appellant coexecutors of decedent's LWT, which was admitted to probate. Further, the circuit court found that the AA did not revoke the LWT or "remove the residuary request [sic] to decedent's stepchildren." Letters co-testamentary were issued on July 21.
Appellant filed a notice of interlocutory appeal on August 21, appealing the limited portion of the circuit court's order that "finds that the 2003 Will of the Decedent is admitted to probate with the contingent gift to the adult stepchildren of the Decedent held as valid."
II. Standard of Review and Applicable Law
Probate cases are reviewed de novo on the record; however, the decision of the probate court will not be reversed unless clearly erroneous. Farrow v. Fuller , 2017 Ark. App. 144, 515 S.W.3d 652. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left, on the entire evidence, with the firm conviction that a mistake has been committed. Id. Our appellate courts defer to the circuit court's evaluation of witness credibility. Id. We have held that
[a] will contest is not a civil proceeding but rather a special proceeding in probate court, governed by statute. Screeton v. Crumpler , 273 Ark. 167, 617 S.W.2d 847 (1981) ; Coleman v. Coleman , 257 Ark. 404, 520 S.W.2d 239 (1974). The cardinal rule of statutory construction is to give effect to the intent of the legislature. Bell v. McDonald , 2014 Ark. 75, 432 S.W.3d 18. We are to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. Id. When the language of a statute is plain and unambiguous and conveys a clear and *565 definite meaning, there is no need to resort to rules of statutory interpretation. Id.
Maxey v. Gray , 2014 Ark. App. 689, at 3, 2014 WL 6804930.
The Arkansas Supreme Court has held that
[t]he revocation of wills is governed by Ark. Code Ann. § 28-25-109 (1987), which provides as follows:
(a) A will or any part thereof is revoked:
(1) By a subsequent will which revokes the prior will or part expressly or by inconsistency; or
(2) By being burned, torn, cancelled, obliterated, or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in his presence and by his direction.
(b) If, after making a will, the testator is divorced or the marriage of the testator is annulled, all provisions in the will in favor of the testator's spouse so divorced are revoked. With these exceptions, no will or any part thereof shall be revoked by any change in the circumstances, condition, or marital status of the testator; subject, however, to the provisions of § 28-39-401.
(c) Where there has been a partial revocation, reattestation of the remainder of the will shall not be required.
In construing § 28-25-109, we have uniformly held that the only methods of revoking a will are those enumerated in the statute. In Re Estate of O'Donnell , 304 Ark. 460, 803 S.W.2d 530 (1991) ; Mosely v. Mosely , 217 Ark. 536, 231 S.W.2d 99 (1950).
Wells v. Estate of Wells , 325 Ark. 16, 19-20, 922 S.W.2d 715, 717 (1996).
Keeping these principles in mind, we consider appellant's points for reversal.
III. LWT Residuary Clause
First, appellant contends that the circuit court erred in declaring effective the residuary bequest in the decedent's LWT because the condition precedent-the decedent's spouse failing to survive him by 30 days-had not occurred. Appellees contend that the contingency did not have to be met because the decedent's obvious intent was that he wanted his stepchildren, whom he referred to in the LWT as "his own," to take the entire estate if their mother could not. Further, they argue that voiding the entire residuary clause would violate the presumption against intestacy.
Appellees cite Cook v. Estate of Seeman , 314 Ark. 1, 858 S.W.2d 114 (1993), for the proposition that, if at all possible, courts must broaden or enlarge a residuary clause to avoid intestacy. However, Cook held that there was no residuary clause disposing of the balance of the decedent's estate, so intestacy as to the residence was unavoidable. Cook, 314 Ark. at 3, 858 S.W.2d at 115. Appellees also argue that there is a strong presumption against partial intestacy, and a will is to be interpreted so as to avoid it unless the language of the will compels a different result. See Chlanda v. Estate of Fuller , 326 Ark. 551, 932 S.W.2d 760 (1996) ; Kidd v. Sparks , 276 Ark. 85, 633 S.W.2d 13 (1982) ; Rufty v. Brantly , 204 Ark. 32, 161 S.W.2d 11 (1942).
Appellees contend that McGuire, supra , disposes of appellant's argument that the residuary bequest to Jasen and Jacob is void or lapsed. In McGuire , Carl and his wife Sharon were divorced on January 28, 1980. McGuire , 275 Ark. at 433, 631 S.W.2d at 13. Carl's last will and testament, dated January 21, 1975, provided:
SECOND: I give, devise, and bequeath the rest, residue and remainder of my *566 estate of every nature and wherever situated to my wife, SHARON LYNN McGUIRE, or, if she shall not survive me, to my surviving stepchildren in equal shares. If neither my wife nor any stepchild shall survive me, I give, devise, and bequeath the rest, residue, and remainder of my estate of every nature and wherever situated to my brother, RICHARD DANIEL McGUIRE, of Texarkana, Arkansas.
Id. at 433-34, 631 S.W.2d at 13. The circuit court rejected a petition to grant letters of administration on the estate, construed the will as though the widow had predeceased the testator, and awarded the bounty to the decedent's stepchildren in accordance with the terms of the will. Id. at 433, 631 S.W.2d at 13. Our supreme court, after quoting the statute codified today in Ark. Code Ann. § 28-25-109(b), held:
We think the above-quoted statute is controlling in this case. The clear meaning of the words used in the statute is that any bequest to the former spouse is void but the remainder of the will remains in effect. Therefore, the stepchildren were the residuary legatees and the proper parties to receive under the will. It is not necessary for us to try to reach the intent of the testator because the statute solves that problem for us. In view of the obvious effect of the statute we see no reason to embark upon a long discussion in order to decide this case. Therefore, in accordance with Ark. Stat. Ann. § 60-407 [ Ark. Code Ann. § 28-25-109(b) ] the named stepchildren are entitled to receive the property under the terms of the will.
Id. at 434-35, 631 S.W.2d at 14.
Appellees argue that, as in this case, McGuire required that the wife be treated as though she had predeceased the testator in order for the stepchildren to inherit. The appellate court ruled that even though the former wife was still alive, the estate passed to the stepchildren. Id. Appellees contend that is the same decision the circuit court in the instant case has made and that it, too, is a correct application of the law.
Appellant insists that McGuire is distinguishable. We agree, noting that Cheryl was still married to the decedent at his death and was therefore decedent's spouse as referred to in the contingent residuary clause of the LWT. In McGuire , Carl and Sharon had divorced before Carl's death, and the couple never remarried. Even though our supreme court in McGuire does not deal clearly with the circuit court's treatment of the divorced spouse as "predeceasing the testator," the court clearly relied on the statute to revoke the bequest to the spouse. We do not rely on McGuire for the proposition that a former spouse should be treated as having predeceased the testator. The reasoning of our supreme court in McGuire -that the statute controls-applies in the instant case; thus, the decedent's bequest to Cheryl was properly revoked.
The circuit court, having eliminated the residuary bequest to Cheryl, was required to construe the second residuary bequest to Jasen and Jacob according to its terms. See also Langston v. Langston , 371 Ark. 404, 266 S.W.3d 716 (2007) (construing Ark. Code Ann. § 28-25-109 and holding that testator's bequest to his wife in a will that was executed the month before the couple's divorce decree had been filed was revoked, despite testator's intent that his wife inherit). This court has held as follows:
The function of a court in dealing with a will is purely judicial; and its sole duty and its only power in the premises is to construe and enforce the will, not to make for the testator another will which might appear to the court more equitable or more in accordance with what the court might believe to have been the *567 testator's unexpressed intentions. "The appellants are correct in the statement that the purpose of construction is to arrive at the intention of the testator; but that intention is not that which existed in the mind of the testator, but that which is expressed by the language of the will." Jackson v. Robinson , 195 Ark. 431, 112 S.W.2d 417, 418.
Harrison v. Harrison , 82 Ark. App. 521, 526-27, 120 S.W.3d 144, 147 (2003) (quoting Park v. Holloman , 210 Ark. 288, 291, 195 S.W.2d 546, 547 (1946) (holding that the residue of the estate was not disposed of by the will and that it should be distributed according to intestate succession) ).
Applying these principles, we hold that the residuary bequest to Jasen and Jacob must fail because Cheryl, who was the decedent's spouse at the time of his death, did not fail to survive him by more than 30 days. The residuary bequest to her was correctly declared void by the circuit court. However, instead of enforcing the LWT as written, the circuit court made a new will permitting Jasen and Jacob, who would not inherit under intestate succession, to inherit under the LWT, even though their mother is still alive. The invalidity of the bequest to Cheryl pursuant to Ark. Code Ann. § 28-25-109 did not rid the LWT of the condition precedent that Jasen and Jacob were to recover only if Cheryl failed to survive the decedent by 30 days. Thus, as in Harrison , supra , the residue must pass by intestate succession. See Ark. Code Ann. § 28-26-103 (Repl. 2012) (providing that the part of the estate not validly disposed of by will shall be distributed as provided by law with respect to the estates of intestates). Thus, because Cheryl, the decedent's spouse, did not predecease the decedent by 30 days and is in fact still alive, the condition precedent that would allow Jasen and Jacob to inherit under the terms of the LWT was not met. Accordingly, we reverse the circuit court's determination that the residuary bequest to the decedent's stepchildren remained effective.
IV. Effect of the AA on the LWT
Second, appellant contends that the circuit court abused its discretion by declaring the LWT effective because, he argues, the AA recognized the will as canceled. We disagree with appellant's contention. The circuit court, relying on Bratcher v. Bratcher , 36 Ark. App. 206, 821 S.W.2d 481 (1991), held that Cheryl had no standing to seek probate of the LWT in the intestate estate or to seek appointment as administrator or executor because the AA provides that Cheryl would make no claim against the estate. The circuit court also held that the AA did not unequivocally revoke the LWT or remove the residuary bequest to the decedent's stepchildren. We hold that the circuit court's determination that the AA did not revoke the LWT is not clearly erroneous.
The circuit court found that the AA had the same operative effect on the LWT as did Ark. Code Ann. § 28-25-109(b) -it revoked any right Cheryl had to share in the decedent's estate, but it did not revoke anyone else's rights. By its terms, the statute controls the only methods to revoke a will, and the AA is not a subsequent will. See Wells, supra. We reiterate that while the bequest to the stepchildren was not revoked, the condition precedent necessary for the stepchildren to inherit was not met. Accordingly, we affirm the circuit court's finding that the AA did not cancel the entirety of the LWT.
Affirmed in part; reversed and remanded in part.
Abramson and Murphy, JJ., agree.